# JACOB RUDER v. NATIONAL COUNCIL OF KNIGHTS AND LADIES OF SECURITY.[1]

January 30, 1914.

Nos. 18,342—(222).

**Receipt of letter by mail — presumption.**

1. Where a letter is deposited in the mails, postage paid and properly addressed, there is a strong presumption that it reached its destination in due course of mail. Applying this presumption, the jury was justified in finding that a cashier's check testified as having been mailed to defendant in payment of an assessment, was received by it. The jury was also justified in believing that the check had been mailed.

[1] Reported in 145 N. W. 118.

---

Note.—On the question of the effect of the adoption of by-laws by fraternal insurance order upon benefit certificates already issued, see note in 1 L.R.A. (N.S.) 1065.

**Answer to juror's question.**

2. The trial court did not err in answering a question asked by a juror.

**Change of by-law — case followed.**

3. Rosenstein v. Court of Honor, 122 Minn. 310, followed and applied to the effect that a by-law of defendant adopted after a benefit certificate was issued, and changing the limit of time for bringing an action on the certificate, is not binding upon the certificate-holder or his beneficiary. Laws 1907, c. 345, § 8, does not apply to benefit certificates issued before its enactment.

**Request of jury for transcript of testimony on former trial.**

4. It was not error to decline to permit the jury, on its request, to have a transcript of the testimony of a witness given on a former trial.

**Refusal to allow letter to go to jury room.**

5. It was not error to refuse to permit a letter in evidence to be taken into the jury room, the letter being read to the jury instead.

**Objections to question sustained.**

6. It was not prejudicial error to sustain objections to questions calling for declarations of the deceased to the effect that he intended not to pay assessments in the future.

Action in the district court for Ramsey county to recover $1,000 upon defendant's certificate of insurance upon the life of plaintiff's father. The case was tried before Quinn, J., and a jury which returned a verdict for $1,039 in favor of plaintiff. Defendant's motion for a new trial was denied. From the judgment entered pursuant to the verdict, plaintiff appealed. Affirmed.

*Harvey E. Hall* and *William G. White,* for appellant.

*A. J. Hertz* and *James E. Markham,* for respondent.

BUNN, J.

Plaintiff was named as beneficiary in an insurance certificate issued by defendant in October, 1906, to his father, Mendel Ruder, a member of Zion Council of defendant order located in Minneapolis. Mendel Ruder died January 5, 1911, and plaintiff brought this action April 13, 1912, to recover on the certificate. The answer alleged that Mendel Ruder failed to pay an assessment for the month of July, 1910, and that thereby his benefit certificate became forfeited July 31, 1910. It made the further defense that the action

was not brought within one year after the death of the insured, as required by the by-laws of defendant. The reply was a general denial. The case was tried to a jury, and the result was a verdict for plaintiff. Defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial, and appealed from an order denying the motion.

The only issue submitted to the jury was whether Mendel Ruder paid the July assessment, the trial court instructing that if he did, plaintiff should recover, but if not, the verdict should be for defendant. The only evidence of payment was the testimony of plaintiff to the effect that some time in July, 1910, the insured, in the presence of plaintiff, procured a cashier's check for $21 issued by the First National Bank of Rahme, North Dakota, and payable to the order of defendant, and at Austin, North Dakota, mailed it to defendant at its home office in Topeka, Kansas, in payment of six month's assessments in advance for Ruder and his wife. Defendant's secretary, to whom assessments were payable, testified that he received no such check, and that the July assessment was never paid.

The charter of Zion Council of which Mendel Ruder and his wife were members, was forfeited in April, 1910, for reasons that are not important here. Mendel Ruder and his wife were advised of this April 22, 1910, and were notified that, in case they desired to continue their membership in the society, "national transfer cards" would be issued transferring them to some other council of the order. The Ruders replied May 10, 1910, from Austin, North Dakota, stating that they wished to continue their membership in the order, that they expected to move back to Minneapolis in a short time, and asking for transfer cards to "Israel" Council at Minneapolis. In this letter, they say: "If it is possible to send our payments direct to the National Council please advise and will do so till we are at Minneapolis." The national secretary answered this letter May 17, acknowledging the receipt of assessments for three months (paid by a money order sent to the defendant at its home office in Topeka from Austin, North Dakota, and received in payment of the April, May and June assessments), enclosing transfer cards to a new council just being organized in Minneapolis, and giving the name and address of its financier. He

124 M.—28.

did not advise whether they would be permitted to pay subsequent assessments to the home office, until they moved back to Minneapolis. It does not appear that these transfer cards were ever presented to the new council, but it does appear that the Ruders still lived in North Dakota at the time it is claimed the July assessment was paid. Under the laws of the order, when the charter of a local council is forfeited, assessments of a member of that council are payable to the national secretary, at Topeka, Kansas, until the member presents a transfer card to another local council and is admitted thereto.

1. Defendant contends that Mendel Ruder, after Zion Council was dissolved, was bound to pay his assessments to defendant at Topeka, Kansas, and that the July assessment, if paid at all, was paid at Austin, North Dakota, from which place the cashier's check is claimed to have been mailed to defendant. We do not understand counsel to argue that Ruder was bound to travel to Topeka each time an assessment was due or that he could not use the mails. The claim is rather that the mere mailing of a draft, money order or the cash, is not payment; that the assessment is not paid until the receipt of the remittance at the home office. The secretary testified, and it hardly needs evidence to establish the proposition, that it was the custom of defendant to accept drafts and money orders and cash sent through the mails. As we view the case, it is not necessary to decide between plaintiff's contention that, because defendant authorized the use of the mails in paying assessments, it would be bound by the mailing of the draft, though it was never received by the defendant, and defendant's claim that there was no payment until and unless the draft was actually received by it. It is a strong presumption that a letter duly deposited in the mails and properly addressed reaches its destination in due course of mail. We all know that it is very rare indeed that this is not the case. If the jury was justified in believing that Mendel Ruder actually mailed the cashier's check in a letter properly addressed to defendant, it was justified, applying the presumption, in finding that the payment was duly received at Topeka. The fact that the national secretary testified that it was not so received, was by no means conclusive evidence; we cannot hold as a matter of law that this testimony overcame the presumption, or

that the jury was not justified in finding that it did not. Though we are not greatly impressed with the truth of the testimony of plaintiff, we have no right to say it was unworthy of belief. This was the second trial of the case, and the witness had given substantially the same testimony in regard to mailing the cashier's check on the former trial. The burden of proof was on defendant. The trial court has approved the finding of the jury on the question, and we find no sufficient reason to interfere.

2. It is claimed that the trial court erred in not clearly answering the question asked by a juror after the charge was concluded. This question was: "Is the mailing of a letter containing a remittance— does that constitute payment?" The court did not answer this question, and we do not answer it in this opinion. In response to the juror, the court in effect said that the jury should consider the fact that the letter was mailed, if it was a fact, in determining the question whether or not the remittance was received. This was correct in itself, and we do not think it was error not to answer the question specifically. The instruction was in line with what we hold to be the law in this opinion.

3. The next claim is that the action was barred because not commenced within one year from the death of the insured. At the time Mendel Ruder joined the order, its by-laws provided that no action could be maintained upon a benefit certificate, unless brought within one year from the date of action taken by the executive committee upon the claimant's right to benefits and the proofs of death. The certificate issued to Ruder contained the same provision. In 1910, the by-laws of the order were so amended as to provide that no action upon a benefit certificate could be maintained "unless brought within one year from the death of the member." The present action was not instituted within a year of Ruder's death, but it was instituted within one year after the claim was presented to and acted upon by the executive committee. It was admitted that defendant had waived proofs of death. The question is whether the by-law adopted in 1910 is valid as against Ruder and his beneficiary. We think that the case of Rosenstein v. Court of Honor, 122 Minn. 310, 142 N. W. 331, is decisive of this question. The only possible distinction is

that the certificate in the Rosenstein case contained no limit of time within which the action must be commenced, whereas in the case at bar the original by-law and the certificate provided a limit of one year after the executive committee acted on the claim. This is really not a distinction, as the by-laws do not contain, nor does the certificate, any limit on the time when the claimant must make proofs of death and present his claim. Laws 1907, p. 471, c. 345, § 8 (G. S. 1913, § 3544), was enacted after Ruder's certificate was issued, and was not a part of his contract. It was not intended to apply to cases where the benefit certificate was issued prior to its passage. The Rosenstein case fully disposes of this point; following and applying that decision, the change in the by-laws did not bind Ruder, and the action was commenced in time.

4. After the jury had retired and had deliberated some hours, they asked to have the transcript of the testimony of plaintiff given on a former trial, which had been received in evidence, but only portions of it read. It is assigned as error that the court did not permit this transcript to be handed to the jury for examination. We cannot hold that this was error, even conceding the propriety of granting the request. In any event, it does not appear likely that any prejudice resulted because the jurors were compelled to rely on their recollections.

5. It would seem that this jury was conscientiously trying to reach a right conclusion. A letter written by a former attorney of plaintiff to the national secretary of defendant, asking for blanks on which to furnish proofs of death, had been received in evidence. In this letter the attorney, in apparent explanation of the delay in notifying defendant of Ruder's death, stated that Jacob Ruder did not know that his father had a benefit certificate in the order until a few days ago. As the letter was written more than a year after Ruder's death, and plaintiff had testified to the payment of dues in the order by his father, it is quite apparent that had it been written by plaintiff himself, the letter would have been evidence of the falsity of the testimony given by plaintiff. The foreman of the jury asked for this letter. It was attached to a deposition in the case, and instead of permitting the jury to take it, it was read to them, as it had been before during

the trial. This refusal of the court to detach the letter and let it go to the jury room, is assigned as error. We hold it was not.

6. Mr. Hall, defendant's attorney, took the witness stand, and testified that he had conversations with Mendel Ruder in Minneapolis on the twentieth and twenty-eighth of May, and second of June, 1910, in which Ruder made expressions to him in regard to his continuation of membership, and his intention to pay assessments in the future. When asked what these conversations were, an objection was sustained, as were objections to questions as to whether Ruder said he intended to drop his membership in the order, and not to pay future assessments. These rulings are assigned as error. The only relevancy that the evidence could have would be to show Ruder's intention not to pay future assessments. Conceding that the declarations of the insured would bind the beneficiary, we do not think there was prejudicial error in excluding this testimony. Ruder, at the time of the alleged conversations, was admittedly a member of the order in good standing. He had paid his assessments for some four years, and had recently paid for the months of April, May and June. His letters, written shortly before, express a decided intention to continue as a member of the order. There was no offer to prove. Taking everything into consideration, we are satisfied that these rulings do not justify granting a new trial.

Order affirmed.