## JOHN MILLER v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.[1]

November 3, 1939.

No. 32,173.

*Doherty, Rumble, Butler, Sullivan & Mitchell* and *Louis W. Dawson,* for appellant.

*Atwood Cranston,* for respondent.

[1]Reported in 289 N. W. 399.

HILTON, JUSTICE.

This is an appeal from an order of the district court for Murray county sustaining a demurrer to defendant's answer on the ground that facts constituting a defense were not pleaded.

The complaint consists of four causes of action to recover under four life insurance policies issued by defendant to plaintiff for total and permanent disability benefits. Defendant paid these benefits from 1932 to 1937. Thereafter it refused. This action was instituted to recover the amount of the unpaid benefits. Plaintiff founds his claim upon the provisions of the policies which read:

"Section 3. Benefits in Event of Total And Permanent Disability before Age 60.

"Total Disability.—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful employment.

"Permanent Disability.—Total disability shall, during its continuance, be presumed to be permanent;

"(a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the Insured;"

Upon proof of total and permanent disability as defined above, the insured is entitled to certain benefits under the policies.

Defendant by answer alleged that plaintiff was not permanently and totally disabled within the meaning of the policies for the reason that during the period for which plaintiff claims benefits he was suffering from diabetes which he voluntarily allowed to exist. There was also an allegation that plaintiff failed to avail himself of the treatment advised and explained by his physician. The answer then alleges:

"That said treatment [insulin and dietary measures] does not subject the patient to any surgical operations, and is neither dangerous, nor painful, nor detrimental to the patient; * * *"

Plaintiff's demurrer was sustained.

At the outset it must be stated that unless the definition of total disability previously quoted requires the insured to submit to medical treatment, then the policy contracts do not elsewhere contain such a stipulation.

Defendant argues that the word "impossible" as used in the provision defining "total disability" imposes a condition precedent to recovery upon plaintiff to take insulin and to resort to dietary measures. The basis is that if treatment were thus taken it would be no longer impossible for the insured to follow a gainful employment since the effect of the diabetes would be removed. In our view, "impossible" simply specifies that the nature of the illness or disability must be such that its effect on the physical organism is to destroy the ability to carry on employment duties. It has reference to the physical ability rather than to the nature and extent of treatment to which the claimant must submit. Consequently, insofar as the express provisions of the policy contracts are concerned, it may be impossible for the insured to engage in employment because of a curable disability. The precise meaning of "impossible" as used in the provision is not free from doubt. But "the language of a policy, being that selected by the insurer and for its benefit, must be clear and unambiguous, and any reasonable doubt as to its meaning must be resolved in favor of the insured." 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 4659; Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N. W. 737. This fortifies the construction placed upon the word. If defendant's view were adopted, the policy would be reduced to one simply insuring against incurable disability only. Surely such a restricted agreement was not intended.

Since policies do not require submission to medical treatment, the question now arises, must plaintiff still resort to medical measures before a mature claim to benefits ripens? We think not. The reasons are manifold.

The policy contracts were drawn by the insurer. If it desired to incorporate into its policies the obligation to submit to reason-

able curative measures, it could very easily have done so. But it did not. Construing the contract, as we must, more strictly against the drafting party, 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 4659, and cases, the agreement is simply one to pay benefits to the insured in case of total and permanent disability irrespective of curability. The policies as written define the rights and duties of the contracting parties and should be construed to mean what has been written. We do not see any reason for reading into the policies by operation of law a condition precedent to liability when the insurer who drafted the contracts did not care to or at least did not incorporate such a provision. The settled policy of the law has been to hesitate to require a person to undergo treatment which he has neither the desire nor inclination to participate in. When the parties, as here, have reduced the agreement to writing and thus defined the obligations, there is more reason to recognize this policy than in some other situations.

Since the contracts leave the question open, the insured has the right to determine what course of conduct he will adopt. There is nothing inherently wrong in plaintiff's refusal. He may be unwise, but that does not afford a legal reason to impose an obligation upon plaintiff which the insurer did not demand at the time the contract was made.

Defendant urges that the doctrine of avoidable consequences is applicable and that plaintiff cannot recover benefits since he voluntarily permits his condition to exist. Analogy is drawn to breach of contract, tort, and workmen's compensation cases. In the situation before us we do not think the doctrine operates. McCormick, Damages, § 33, p. 129, states the rule as follows:

"Where the defendant has already committed an actionable wrong, whether tort or breach of contract, then this doctrine limits the plaintiff's recovery by disallowing only those items of damages which could reasonably have been averted. For any injury or loss not thus avoidable, the plaintiff may still recover."

In the situation herein involved, the breach of contract was defendant's refusal to continue payments under the policies.

It is for an amount equivalent to these unpaid benefits that this action was instituted. In other words, they represent the amount of damage plaintiff has suffered by the breach. They are not in an amount in excess of the actionable breach. There is not involved in this case the question of increasing damage after breach. What is being demanded is the equivalent to the agreed performance. How, then, can the doctrine be applicable? By the policies, defendant undertook to pay benefits if and when plaintiff became disabled. It did not require submission to treatment. Plaintiff's refusal to take insulin is not increasing the damage after breach. It is simply a refusal to do what there is not a duty to perform and for which defendant did not demand the obligation to perform. Clearly, this is a situation distinguishable from that wherein a breach of contract occurs and then plaintiff by unreasonable conduct increases the loss. In such case there can be no doubt but that he is under a disability to recover for the loss attributable to him. Wavra v. Karr, 142 Minn. 248, 172 N. W. 118; McCormick, Damages, p. 130, § 34. But to adopt a rule requiring plaintiff here to reduce the amount defendant has agreed to pay would constitute a forced modification of the contracts.

Our view is substantiated by Jefferson Standard L. Ins. Co. v. Hurt, 254 Ky. 603, 606, 607, 72 S. W. (2d) 20, 21, which was an action to recover certain disability benefits provided for by a life policy issued to Hurt. Hurt claimed he "became totally and permanently disabled by disease." Defendants claimed Hurt "must to minimize liability submit to reasonable and proper treatment to which a reasonably prudent man would ordinarily submit." The court there said: "But we have never gone so far as to apply the doctrine of minimizing damages * * * to a policy of insurance." Accord, see Shane v. Equitable L. Assur. Soc. 22 Tenn. App. 85, 118 S. W. (2d) 570, 573.

The analogy to tort cases where the doctrine of avoidable consequences is well established is not apt. There the law seeks

only to impose on the tortfeasor liability for the actual injury he has inflicted. Here, however, plaintiff is seeking simply the promised benefits. The exact counterpart in the case of a tort is the injury actually inflicted by defendant and for which the law holds him responsible.

In workmen's compensation cases, the object of the law is to provide benefits to the injured employe during disability irrespective of the employer's fault. The law does not contemplate benefits if the employe can be restored to industrial capacity. This is the rationale of Foster v. Schmahl, 197 Minn. 602, 268 N. W. 631, wherein it was held that a workman who was industrially blind without glasses was not totally disabled, since by the use of them the disability could be removed. The situation before us differs in nature and principle from the compensation cases.

While it might be that the insurer could compel by appropriate provisions submission to medical treatment at the insured's expense, yet, absent this, we do not think such a requirement should be placed upon that party. In both workmen's compensation and tort cases expenses for medical treatment are part of the recovery.

Neither is the suggestion sound that for reasons of public policy the insured should be compelled to submit to medical treatment. There is nothing morally or legally wrong in the plaintiff's conduct. If the policy had provided for benefits for total and permanent disability regardless of whether the insured submitted to medical treatment, would such a provision be void as contrary to public policy? We do not think so. Why, then, should public policy require that there be read into the contract this additional provision not included by the parties?

Any analogy to self-inflicted injuries is necessarily inapt. Such an act has long been considered violative of sound public policy. Coverage under an insurance policy for that reason would not include a disability from such a source. Likewise, there would be bad faith on the part of the insured. There is a substantial difference between inflicting a self-injury and being afflicted with a disability from causes which the individual does not select or

desire but who, when so afflicted, simply refuses to endure the trouble, expense, and often trying experiences incident to medical treatment. In the case of self-inflicted disability, the act itself is contrary to public policy regardless of insurance. But what is there contrary to public policy in a man pursuing a course of conduct such as that here after disability has been initially caused by circumstances beyond his control? Clearly, there is nothing. Why, then, should the mere fact that he has insurance suddenly clothe his conduct as contrary to public policy?

We have not overlooked the cases cited by defendant. Discussion in detail is without purpose. It is sufficient to state that authorities are in conflict as to whether an insured in order to recover disability benefits must first submit to such surgical treatment as a reasonable man would. See 4 Newark L. Rev. 8, 21; 23 Minn. L. Rev. 384. Cases dealing with the precise problem here for decision appear to be meager. However, for the reasons stated, the views expressed are adopted, but with deference to the one line of decisions represented by Cody v. John Hancock Mut. L. Ins. Co. 111 W. Va. 518, 163 S. E. 4, 86 A. L. R. 354, and note, which compel the insured to submit to such minor surgical operations as a reasonable man would undergo.

As we understand defendant's position, if the allegations relied upon here do not establish nondisability within the meaning of the policy, then defendant admits disability. There was no error below.

The order appealed from is affirmed.

STONE, JUSTICE (dissenting).

The question is not whether plaintiff is under "contractual obligation" (cf. Tittsworth v. Ohio Nat. L. Ins. Co. 6 Tenn. App. 206) to submit to treatment. Rather and only the problem is whether the condition of the policy (actual impossibility of pursuit of gainful employment) is fulfilled so long as the insured's unreasonable refusal of treatment, rather than his ailment, is made to appear the one present obstacle to gainful occupation. No disability can entitle plaintiff to recovery unless, within the meaning

of the policy declaration, it "continuously renders it impossible for the insured to follow a gainful employment."

"Breach of contract" arises only from wrongful conduct. "The promisor does not necessarily commit a breach of contract if he fails to perform his promise. * * * non-performance of a contract, if justified, is not a breach. Justification may be due to the fact that * * * a duty of immediate performance has not arisen because some condition precedent has not occurred." Restatement, Contracts, § 312, Comment a.

Clearly, one claiming a breach of contract has no case where, as here, the condition precedent to the wanted performance rests wholly in his own omission of duty.

It is always easy to worst an insurer upon the ground that its policy must be strictly construed against it if judges are at liberty first and arbitrarily to create doubt and then to resolve it adversely to the insurer by arbitrary construction. I suggest that, inadvertently, just that course is being followed here. What is uncertain or equivocal in the phrase "continuously renders it impossible for the insured to follow a gainful employment"? The supposed vacuity, without which this decision cannot stand, is not found in the language nor in its application to facts. It is found only by fancy in a hypothetical provision which might have been used, but was not, affirmatively requiring the insured to resort to cheap, painless, and efficacious cures as needed.

Such silences concerning matters already covered by contractual language, or left for decision by applicable law, are not properly resorted to for the creation of artificial ambiguities.

No contract concerning employment for a definite term says anything about the employe's duty to minimize·damage in case of breach. Yet if an employe sues for damage for wrongful discharge and is met by proof that immediately on discharge he was offered a similar job as good or better from all standpoints, wages included, he could not recover for the simple reason that, having refused the new position, his whole damage was self-inflicted.

In similar fashion, the duty of an employer to furnish his employes with reasonably safe tools and place to work is no creation of the contract. It is imposed by law. James Quirk Milling Co. v. M. & St. L. R. Co. 98 Minn. 22, 25, 107 N. W. 742. Silence of the contract does not negative the duty and so is irrelevant to consideration. So also in compensation cases, where we hold the relationship contractual.

How is that "continuously impossible" which one by slight effort may make not only easily possible but wholly practicable and praiseworthy? This is just such a case if the answer is true.[2]

To the knowledge of all of us, many a workman in office, factory, or on the farm has suffered hernia in youth or early adult life. Yet by the purchase and wearing of a brace he has removed all ground for even suspicion of resulting disability as here defined. By refusing aid from oculist and spectacles, we who write these decisions could impose upon ourselves disability for gainful employment. No one would suggest that there was resulting and continuous hindrance from carrying on, or that we would be so disabled as, its other requirements satisfied, to entitle us to quit work and have the benefit of any statute for our retirement on pay. We would meet the deserved derision of bar and laymen alike if, claiming such benefits, we asserted the right because the statute was "silent" about our duty to resort to any available and reasonable means of exchanging our self-imposed uselessness for our former state of utility, whatever it may have been.

---

[2]Paragraph VIII of the answer alleges that:

"* * * a method and manner of treatment therefor [for diabetes] consisting of the regulation of diet and use of insulin has been well known to the medical profession generally and in the locality of plaintiff's residence; that said treatment removes any disability which could or would result from said condition; that said treatment does not subject the patient to any surgical operations, and is neither dangerous, nor painful, nor detrimental to the patient; that said treatment is not expensive to patients paying therefor and is available without charge or expense to patients in the locality of plaintiff's residence who are in need of said treatment but financially unable to pay the usual cost of the same."

230

The analogy of the duty to minimize damages, correctly drawn by appellant from tort, contract, and compensation law, is, I think, compelling. Compelling because in *all* legal relations the law imposes on the injured person a duty not unreasonably to increase or continue his own hurt. We apply that rule for the benefit of ordinary contractors and the most guilty of tortfeasors. Why should we except defendant simply because its contract happens to be an insurance policy?

Without expressing opinion as to a case for surgery, I insist that the answer here presents a question of fact. That issue is made in substance by the averment that the disability is not total because it can be removed by slight and wholly reasonable effort by plaintiff himself. The gist of the allegation is that the continuance of disability is unreasonably and inexcusably self-imposed and so beyond the coverage. Evidence may make the truth appear otherwise, but, for the present, the case being here on demurrer, we must postulate truth for defendant's claim.

Maresh v. Peoria L. Ins. Co. 133 Kan. 191, 299 P. 934, 937, I beg leave to submit, is not in point. There a young farmer had been horribly injured. The jury found total and permanent disability. The defense had requested an instruction that it was the duty of plaintiff to exercise every effort to aid recovery. The facts offer nothing to suggest that he had not done so. But the court issued this dictum [133 Kan. 197]:

"Defendant requested an instruction to the effect it was the duty of plaintiff to exercise every reasonable effort to aid recovery. The contract does not so provide. No doubt it is the moral duty of every person to make the most of himself under even the most adverse circumstances; but the issue in this case was whether plaintiff's disability was permanent."

Aside from the fact that in tort and contract cases the duty to minimize damages is legal as well as moral, there was not propounded to the supreme court of Kansas the present question whether a disability is permanent which will cease to be so

upon a very slight effort, inexpensive and wholly reasonable, by the victim.

I must decline participation in a holding that a duty imposed upon one not only in favor of a party contracting with him but also a wrongdoer who has done him grievous harm disappears when and because the other contracting party is an insurer. The duty so imposed, even in contract cases, is a creation of law, not contract. How, then, can we say, as we do here, that the duty is absent simply because the contract, explicit enough otherwise, is "silent" about resulting legal duty?

An important fact of modern life is the advance made in the healing art. Its principal goal, next to saving and prolonging life, is to prevent and remove disability. If this answer, which we hold legally insufficient, is factually sound (and we must so assume), we say simply that we as judges will nullify, in the field of insurance, one of the great accomplishments of modern medicine. Too esoteric for me is the legalistic refusal of adjustment to a fact of progress in medicine which is the real, though undeclared, thesis of this decision.

This is not a case of duty to minimize damages. It is even more plain than that. It is a case wherein, on the answer, plaintiff is attempting to impose liability on defendant by his own wrongful act. (If self-inflicted disability is immoral, how is it that self-inflicted continuance is morally or legally blameless?) It is one where, on his own wrongful omission alone, he is invoking a contractual condition not otherwise fulfilled. Plaintiff's disability is made to appear the result of his own refusal to perform a duty of reasonable care and so to act as not wrongfully to impair concurrent rights of others. Those duties rest upon *all* at *all* times, as appears from the tort, general contract, and compensation cases. They are in point and controlling because they show plaintiff's duty as matter of law, not contract. And this contract relieved plaintiff of no duty otherwise his.

The norm of reasonable conduct is harsh enough to satisfy the demands of justice as against unfaithful contractor and wilful

tortfeasor. Why, then, is it not severe enough to answer the call of justice on an insurer? Why as against him alone must one more severe be formulated? Why is his case alone not susceptible of decision on the standard otherwise of universal application?

The only burden put upon the insured by the adoption of the minority view would be one common to all plaintiffs—that of meeting, by evidence if need be, new matter in defense. Such new matter, in my opinion, would seldom be decisive as matter of law. The standard of reasonableness will enable the verdict to settle it for most cases.

From the foregoing it can probably be inferred that, in my view, it was error to sustain the demurrer.

HOLT and LORING, JUSTICES (dissenting).

We concur in the dissent of Mr. Justice Stone.