# IRVIN L. DAWES v. BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN.[1]

February 4, 1944.

No. 33,624.

*A. G. McKnight, Harold C. Heiss,* and *Russell B. Day,* for appellant.

*Nelson & Cedergren,* for respondent.

PETERSON, JUSTICE.

In this action plaintiff seeks to recover the amount of certain permanent and total disability benefit allowances which he claims is due him from defendant. Plaintiff prevailed below. Defendant

[1]Reported in 13 N. W. (2d) 28.

appeals from the order denying its motion in the alternative for amended findings of fact and conclusions of law or for a new trial.

In addition to its other activities, defendant operates as an unincorporated fraternal benefit insurance society through a grand and subordinate lodge organization. In 1906, plaintiff became, and ever since has been, a member of its beneficiary department. As such member he was entitled to all the benefits, rights, and privileges accruing therefrom. Defendant issued to plaintiff a beneficiary certificate which, among other things, provides as a condition thereof that defendant's constitution may be altered or amended at any time thereafter.

In 1931, by amendment of its constitution, defendant adopted a plan for the payment of disability benefit. Insofar as here pertinent, the plan provides that a member of the beneficiary department in good standing who is "adjudged" by the general secretary and treasurer to be totally and permanently disabled shall be entitled to receive a disability benefit of $50 per month until the member's death or until he is "adjudged" no longer entitled to the same, and that a member deeming himself entitled to a disability benefit may apply therefor on forms provided by defendant for the purpose. A separate fund, called "Disability Fund," was created out of which the benefit was payable. All of defendant's members in good standing were assessed to provide the fund. Members were given the right to appeal from the decision of the general secretary and treasurer. The time within which to sue was limited by section 25 of defendant's constitution, which provides:

"Sec. 25. Any and all right of action arising under any claim for *disability benefit* allowances in this department shall be absolutely barred unless suit is commenced by the member, or on his behalf in some court of competent jurisdiction within six (6) months of notice of the final rejection of the claim by the Board of Directors."

On October 14, 1932, plaintiff filed with defendant on one of its forms an "Application for Disability Benefit Allowance," claiming that he was totally and permanently disabled by thromboangiitis obliterans (sometimes known as Buerger's Disease). He submitted

to a medical examination, which showed that he was disabled by the disease as claimed. Under date of December 12, 1932, defendant in a letter to plaintiff referred to his application as a disability benefit "claim" and advised him that he had been placed on its payroll to receive benefits from the "Disability Benefit Department." Plaintiff paid the assessments. He received the benefit allowances regularly until defendant quit paying them under the circumstances to be presently mentioned.

In 1937, defendant amended its constitution so as to provide for the discontinuance and liquidation of its disability benefit department. This was to be accomplished principally by refusing thereafter to admit new members. It provided for the continuance of payment of benefit to those entitled thereto as of its effective date. Members were accorded a right of appeal from any adverse decision. A provision was adopted limiting the time within which to sue which reads as follows:

"Sec. 2. Any suit for the recovery of total and permanent disability benefits, when such payments have been *terminated,* shall be absolutely barred unless brought within six (6) months from the date of the decision of the Board of Directors." (Italics supplied.)

In May 1939, defendant terminated the payment of disability benefit allowances to plaintiff. At that time defendant's medical examiner recommended that plaintiff be removed from the roll of those entitled to receive such payment. The recommendation was based in part, if not principally, upon the fact that plaintiff had an income other than the benefit. By appeals, plaintiff exhausted his remedies within the order for what he claimed was a wrongful termination of the payments. Final decision by defendant's board of directors went against him in September 1939. He received a copy of the decision on October 18, 1939. The summons in this action was served on April 12, 1941, approximately one and one-half years after final decision by defendant's board of directors. In the amended complaint (perhaps it is a supplemental one also), plaintiff claimed $1,950 benefits due him as of September 1942.

The trial court found that plaintiff was totally and permanently disabled from October 1931 to the time of trial in December 1942; that the provisions of section 25 of defendant's constitution limiting the time within which to bring an action under claim for disability benefit did not apply to a termination of payments after the application therefor had been granted; that, under such circumstances, plaintiff was entitled to sue at any time within six years, the period allowed by the statute of limitations, Minn. St. 1941, § 541.05 (Mason St. 1927, § 9191) ; and that the amendment adopted by defendant in 1937, limiting the time of suit to six months where payment of benefit was terminated, was unreasonable and void as to plaintiff. As a conclusion of law, it held that plaintiff was entitled to recover.

Very properly, the finding as to plaintiff's disability is not challenged upon the appeal. The only questions raised here are whether plaintiff's cause of action is barred by either section 25 of the 1931 amendment or by section 2 of the 1937 amendment of defendant's constitution. In addition to the evidence that defendant referred to plaintiff's application for benefit as a "claim," it appeared from other provisions in defendant's constitution that the word "claim" was used with that meaning in similar cases. For example, an application required by defendant to be filed for disability allowances for the amputation of a hand or a foot, for the loss of an eye, or for having reached the age of 70 years was referred to as a claim. Applications for certain other benefit allowances were also referred to as claims. In no instance was the discontinuance of payments referred to as the rejection of a claim. In the 1937 amendment the word "terminated" is used in referring to the discontinuance of payment of disability benefit. For purposes of decision, we shall assume, in accordance with defendant's contention, without so deciding, that the contract between the parties consisted of plaintiff's application for membership in the beneficiary department, the beneficiary certificate, and defendant's constitution, and that its constitution was subject to amendment from time to time after the issuance of the certificate.

■ A policy of insurance, like any other contract, is to be so construed as to ascertain and give effect to the intention of the parties as it appears from the entire instrument. Here, the word "claim" in section 25, which limits the time within which to sue to six months after notice of final rejection of the claim by defendant's board of directors, is susceptible of more than one meaning. One meaning, favorable to plaintiff as the insured, is that the word "claim" refers to the original application for the benefit allowances payable monthly. This application, under defendant's constitution, must either be approved or rejected. From the context it appears that similar applications under other provisions of defendant's constitution were expressly referred to as claims. This meaning finds support also in the construction placed upon the application by defendant in referring to it as a "claim" when it finally approved the same and advised plaintiff that he would receive payment of the benefit. Section 2 of the 1937 amendment, referring to the discontinuance of payments not as a rejection of the claim but as a termination of payments, emphasizes the meaning which defendant prior thereto had attached to the words "rejection of the claim." The inference is permissible that the words "final rejection of the claim" were used by defendant in the 1931 amendment to mean that a disallowance of an application for benefit allowances constituted the rejection of the "claim" therefor; that, under the circumstances, for purposes of clarity if not for other reasons, another term should be used in the 1937 amendment to refer to the discontinuance of the payments under a claim which had been allowed, and that for the reasons mentioned the words "final rejection of the claim" were not appropriate to refer to a discontinuance of payments, but the word "terminated" was. Consequently, the words "final rejection of the claim" in section 25 should be held to mean the disallowance in the first instance of an application for disability benefit allowances and not the discontinuance of payment of the allowances. Another meaning is permissible, one favorable to defendant, that the refusal to make the payments constituted a rejection of the claim therefor. The meaning favorable

to defendant's contention would be entitled to great weight if the words "final rejection of the claim" stood alone and had not by contextual usage and practical construction acquired a meaning opposed to defendant's and favorable to plaintiff's contention. It seems to us that under the circumstances the parties used the word "claim" as referring to the application made in the first instance for disability benefit allowances; that it was such application that was to be accepted or rejected; and that a final rejection of the application was a final rejection of the claim. Because, to say the least, the meaning of the language is doubtful, plaintiff as the insured is entitled to the construction which is favorable to him. Where, by reason of ambiguity, there is doubt or uncertainty as to the meaning of the language of an insurance policy and it is susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. Miller v. Mutual L. Ins. Co. 206 Minn. 221, 289 N. W. 399, 126 A. L. R. 129; Zeitler v. National Cas. Co. 124 Minn. 478, 145 N. W. 395; Robson v. United Order of Foresters, 93 Minn. 24, 100 N. W. 381. The practical construction placed upon the language by the parties, as disclosed by the letter referring to plaintiff's application as a claim and the 1937 amendment referring to the discontinuance of payments as the termination thereof, is entitled to great weight and is an additional reason for according to the insured the benefit of the doubt as to which meaning was intended. Carlson v. Scandia L. Ins. Co. 170 Wis. 342, 174 N. W. 896. In that view, section 25 did not apply to the termination of the payments, and the time within which to sue was six years under the statute of limitations.

■ Of course, the provisions of defendant's constitution that any provision thereof was subject to subsequent amendment authorized defendant to change the time within which to bring suit either upon denial of the original application for the disability benefit or upon termination of the payments to which plaintiff was entitled under the allowance of his claim therefor. Such a change must be reasonable as to the member. A change adopted pursuant to the constitution of an insurance society, after issuance of a benefit cer-

tificate, whereby the time for bringing suit is changed from the six-year period allowed by the statute of limitations to one year was held to be unreasonable in Rosenstein v. Court of Honor, 122 Minn. 310, 142 N. W. 331. See Ruder v. National Council, 124 Minn. 431, 145 N. W. 118; 38 Am. Jur., Mutual Benefit Societies, § 22. The 1937 amendment of defendant's constitution changing the time within which to sue from six years, to which plaintiff was entitled under the statute of limitations, to six months after termination of the payments is void as to plaintiff. He still had the right to sue at any time within the six years allowed by the statute of limitations. This he did.

Affirmed.

MR. CHIEF JUSTICE LORING, being engaged on the pardon board when this case was argued, took no part in its consideration or decision.

MR. JUSTICE MAGNEY, having presided at the trial of this case in the district court, took no part in its consideration or decision.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.