# ALLIED MUTUAL CASUALTY COMPANY v. HAAKON ASKERUD AND ANOTHER.

94 N. W. (2d) 534.

January 9, 1959—No. 37,533.

*Philip Richardson,* for appellant Harry Askerud.
*Kenneth K. McMillan,* for appellant Haakon Askerud.
*Plunkett & Plunkett,* for respondent.

MURPHY, JUSTICE.

This is an action by an insurer for an injunction and a declaratory judgment as to its duties and liabilities under two insurance policies in respect to a personal injury suit which is now pending against the insured.

A summary of the facts as they appear in the record shows that Harry Askerud, the insured, and LaVerne Turvold, a close friend, had an oral understanding that they would combine their efforts in so far as labor was concerned to construct a house on property which the insured owned adjacent to his home near Austin, Minnesota. Both men were employed full-time at the George A. Hormel Company plant in Austin and planned to work on the house in their spare time. The construction was financed by the insured and his wife by mortgaging the property. The insured and Turvold intended that when the house was completed Turvold would purchase it providing he could obtain the necessary financing, in which event he would pay the insured the value of the lot, all costs incurred in the construction, and a reasonable

sum for the value of the insured's labor.

There is evidence that in the event Turvold could not obtain financing the insured planned to sell his own home and move into the new one; it does not appear that there ever was any intention to sell the home on the open market. In carrying on the project, the insured and Turvold employed various persons from time to time for wages, although they did most of the work themselves. The insured purchased the two insurance policies in question on May 4, 1955, from an agent of plaintiff who had his desk in the office of the building and loan association which financed the construction.

On October 22, 1955, Haakon Askerud, the father of the insured, was injured by the collapse of the scaffolding on which he was standing while assisting in shingling the roof of the new house. The father resided in Rochester, Minnesota, approximately 40 miles from Austin. Some years before he had lost his right arm below the elbow in a combine accident. From the evidence it appears that he occasionally visited his son in Austin, and on three or four occasions assisted his son on varying tasks. He did not come to Austin on any prearrangement to work or at any agreed times, nor was he ever paid for his labors. The plaintiff company by this action seeks a declaration of its duties and liabilities growing out of the injuries sustained by the insured's father.

The trial court concluded that the accident was not covered by either policy and that, therefore, the insurer was not obligated to defend the personal injury action. It entered judgment accordingly, and this appeal is taken from that judgment. Such further facts as may be necessary to an understanding of the issues will be discussed in connection with our examination of various provisions of the policies.

The "General Liability Policy," by a typewritten insertion, described the business of the insured as "Building his own Private Residence." The policy contained the following insurance agreement:

"Coverage A. Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and

arising out of the hazards hereinafter defined."

The hazards defined in the policy are described in this language: "Premises—Operations. The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto." Under the declarations of the policy the "operations" appear to be more particularly described by a typewritten insertion as:

"Carpentry in the construction of detached private residences for occupancy by one or two families, including installation of interior trim, builders' finish, cabinet work and the construction of private garages in connection with such structures."

■ The plaintiff company denies liability on the ground that the construction of a dwelling does not fall within the division of hazards as contemplated by the insuring agreements. In discussing the provisions with reference to "Premises—Operations," plaintiff company argues that the risk is not insured, because (a) the house was being built for resale at a profit and (b) the insured was engaged in a joint venture with his neighbor, LaVerne Turvold, and it asserts:

"* * * The voluntary expansion of these operations by the insured without seeking endorsement by the plaintiff, or even notifying the plaintiff, cannot operate to extend coverage to such expanded operations."

It should be kept in mind that the record establishes that this policy was purchased in the insurance department of the building and loan association which financed the building of the home. The agent was fully aware that the plaintiff was seeking insurance for liability, not upon premises on which he was living but upon premises on which a building was under construction. The insured told the agent that he wanted "full coverage on the house" and that he wanted "a complete all around coverage." In expressing the nature of the insured's business, the policy describes it as "Building his own Private Residence," and in the classification of the risk set forth in the declarations the "Premises—Operations" definitely refer to the "construction of detached private residences."

It appears satisfactorily from the record that the insurance company was aware of the fact that the insured "wanted liability coverage on anything that was going on on the project." It further appears that the typewritten clauses inserted in the policy are descriptive of the nature of the premises and recognize that the risks insured are those inherent in the construction of a building. Accordingly, it cannot be fairly said that the insurance company was misled by the insured or that the insured expanded operations on the premises beyond the extent contemplated when the policy was issued. In any event the record satisfactorily establishes that at the time the insurance policy was taken out there was no binding agreement between the insured and Turvold for a sale of the house under construction. It was certainly never intended that the house be placed on the open market for sale. There was no enforceable agreement between the insured and Turvold for the transfer of the title to the house. It was the obvious intent of the policy to cover the premises on which the insured was engaged in building a house, and the insured believed he was receiving a "complete all around coverage" for liability in connection with the project.

This construction of the policy is consonant with the rule that, where the language of the policy is that selected by the insurer, any reasonable doubt as to its meaning must be resolved in favor of the insured. 9 Dunnell, Dig. (3 ed.) § 4659. In Weum v. Mutual Benefit Health & Acc. Assn. 237 Minn. 89, 105, 54 N. W. (2d) 20, 29, we held:

"* * * In resolving doubts as to the meaning to be given the terms of an insurance contract, this court will note the purposes for seeking insurance and will avoid an interpretation which would forfeit rights which the insured may have believed he was securing, but which, because of the failure of the insurer to use clear language, are now cast in doubt."

■ The plaintiff insurer next contends that the general liability policy was designed to protect the insured from claims of the general public and not from claims of employees of the insured. It points to an exclusionary provision of the policy which states:

"This policy does not apply:
*   *   *   *   *

"(i) under Coverage A, to (1) bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment of the insured * * *."

The company argues that the policy was intended to insure against claims of the general public or guests who might be injured on the premises. Asserting that the father of the insured was an employee, it contends that the risk of his accident is not included in the policy. In its memorandum the trial court expressed the view that the policy was not intended to cover anyone working on the building, whether an employee or a volunteer, but he made no determination on that issue.

As indicated by the quoted exclusionary provision, it is clear that the policy does not cover an employee while engaged in the employment of the insured. The father's regular employment was that of a watchman at the Minnesota State Hospital at Rochester. On occasion he would visit his son and lend a hand in the work going on in connection with the building of the new house. It is apparent from the provisions of the insurance policy that the reference to an injury to an employee "engaged in the employment of the insured" contemplates a person who is employed to do certain work pursuant to a contract for hire. The policy is identified as an "M & C" policy designed to exclude from insured risks injuries to employees of manufacturers and contractors. By the inserted provisions the company intended to adapt its terms to meet the needs of the insured. We do not think it would be a reasonable construction of the policy to hold that, where a member of the family of the insured voluntarily and gratuitously assists in some activity on the premises, he would be considered to be "engaged in the employment of the insured." We, accordingly, hold that the injury to the insured's father is covered by the provisions of general liability policy.

■ The insurance company argues that the "Comprehensive Personal Liability Policy" does not cover the accident because (a) the building was a dwelling being constructed on land other than land on which the insured's residence was situated; (b) the construction of the residence was a joint venture or business enterprise not covered by the language of the policy; and (c) the dwelling was not being constructed by an independent contractor.

The plaintiff company argues that it is not liable because the dwelling being constructed does not come within the definition of premises in the policy. The definition is as follows:

"IV.   Premises * * * Defined

"(a) Premises.   The unqualified word 'premises' means (1) all premises where the named insured or his spouse maintains a residence and includes private approaches thereto and other premises and private approaches thereto for use in connection with said residence, except business property and farms, * * * and (4) vacant land, other than farm land, owned by or rented to an insured, including such land on which a one or two family dwelling is being constructed for the insured by *independent contractors.*" (Italics supplied.)

It should be noted that under this policy the insurer agrees to pay "all sums which the insured shall become obligated to pay * * * relating to the premises * * *." The "premises" defined in the printed portion of the insurance agreements include the premises where the insured maintains his residence, and the declarations contain this statement:

"The principal residence premises designated in Item 1 are the only premises where the named insured or spouse maintains a residence, other than business property and farms, except as herein stated: *Building Private Residence.*" (Italics supplied.)

It is important that the words "Building Private Residence" were typed in the policy by the agent.

We think that the arguments of the company may be disposed of by pointing out that they ignore the purpose of the policy and the meaning of the language typed into the declarations: "Building Private Residence." This language obviously indicates an intent to cover the particular premises upon which the residence was being constructed.

The insurance company, further contending that the undertaking was a joint business venture for profit, calls attention to an additional exclusionary provision:

"This policy does not apply:

"(a) to any business pursuits of an insured, other than activities therein which are ordinarily incidental to non-business pursuits * * *."

The policy expressly covers premises owned by the insured, which include the building here in question. We are not persuaded that this was business property within the definitions in the policy. There was no activity in the sense of a "trade, profession or occupation" being conducted on the property. The insured was regularly employed at the George A. Hormel Company and this was the only house he ever attempted to build, although he had helped friends on other occasions during his spare time. He had often engaged in repair jobs during off hours, and he and Turvold "used to get together to make this and that together." He was not an experienced carpenter or contractor. We are of the opinion that the business contemplated by the printed provisions of the policy was a type of activity in which persons regularly engage for the purpose of earning a livelihood or for gain such as a "trade, profession or occupation." This criteria is certainly not met by the spare time endeavors of the insured in this case. In excluding "business pursuits" the policy intends to exclude coverage of commercial enterprises rather than the type of activity here demonstrated.

It is our further view that the definition of premises as including land on which a dwelling is being constructed by independent contractors is meant only to *include* such property within the coverage of the policy. Nowhere is it stated that the policy *only* covers premises being built by an independent contractor. The construction urged by the insurer would in effect deny to the insured the intended benefits of the policy.

Where there is a conflict between the printed clauses in an insurance policy and typewritten provisions inserted at the time the policy is issued, we are controlled by certain well-recognized rules of construction. The resulting ambiguity is to be resolved against the insurer unless the conflict can be removed by giving to each clause a different but a reasonable meaning in harmony with the policy as a whole; and in the event of a conflict between general and particular language, the particular controls. Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 30 N. W. (2d) 341. If the written and printed portions of a policy cannot be reconciled by any reasonable construction, the former will control. Biwabik Concrete Aggregate Co. v. United States F. & G. Co. 206 Minn. 239, 288 N. W. 394. A policy of insurance, like any other contract, is to be so construed as to give

effect to the intention of the parties as it appears from the entire instrument. Dawes v. Brotherhood of Locomotive Firemen and Enginemen, 216 Minn. 411, 13 N. W. (2d) 28; First Trust Co. v. Northwestern Mutual Life Ins. Co. 204 Minn. 244, 283 N. W. 236; Mather v. London Guarantee & Acc. Co. 125 Minn. 186, 145 N. W. 963; Jorgenson v. Girard Fire & Marine Ins. Co. 229 Minn. 48, 38 N. W. (2d) 209; Phoenix Ins. Co. v. Taylor, 5 Minn. 393 (492).

Reversed.

MR. JUSTICE NELSON took no part in the consideration or decision of this case.