**REINSURANCE ASSOCIATION OF MINNESOTA, Appellant,**

**v.**

**Richard PATCH, H.P. Snyder Mfg. Co., et al., Montgomery Ward & Company, Inc., Cherry Industrial Ltd., Wetterlin, Inc., James O. Lloyd, et al., Respondents.**

**No. C3–85–2084.**

Court of Appeals of Minnesota.

March 18, 1986.

Gary J. Gordon, Julie A. Williams, Cragg, Bailly, Gordon & McCollum, Minneapolis, for Reinsurance Ass'n of Minnesota.

Mark H. Stromwall, Prior Lake, for Richard Patch.

Richard P. Mahoney, Minneapolis, for H.P. Snyder Mfg. Co., et al.

James R. Crassweller, St. Paul, for Montgomery Ward & Company, Inc.

Charles H. Becker, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Cherry Industrial Ltd.

Michael R. Peterson, Minneapolis, for Wetterlin, Inc.

Robert K. Randall, Wayzata, Stanley Karon, St. Paul, for James O. Lloyd, et al.

Heard, considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant Reinsurance Association of Minnesota appeals a summary judgment determining respondent Richard Patch's

personal liability insurance policy issued by appellant provides coverage for the injuries sustained by respondent James Lloyd, which allegedly occurred in part, because of Patch's negligence in repairing Lloyd's bicycle. Appellant contends the business pursuits exclusion in the liability policy excludes coverage. We affirm.

## FACTS

Respondent Richard Patch has been employed for 13 years as a full time laborer and machine operator with the Arkay Construction Company. As a hobby, Patch repairs bicycles in the garage at his residence. Patch has repaired bicycles since he was eight years old and has performed repair for others the past 20 years. Patch's repair activities are performed on a part time basis outside his regular work day hours, normally on weekends or evenings.

Patch does not maintain records of his repair activities, nor does he use a trade name, stationery, or business cards. He does not maintain a business account checkbook for his repair activities and does not advertise to solicit customers. People normally bring bicycles to be repaired because of word of mouth.

All Patch's repair skills are self-taught. He has taken no formal training, has never worked at a bicycle shop, and does not belong to any bicycle group or association. Patch frequently fixes bikes for nothing, and does not maintain records of the bike repairs, parts and charges. He is unaware of what income is generated by the repair activities and claims he keeps fixing bicycles to keep his three children happy. He also repairs his childrens' bicycles.

For approximately five years, Patch had an informal arrangement with respondent Wetterlin, Inc., which operates a Coast to Coast Hardware Store, that Patch would repair bicycles for any customer who brings a bicycle to the store. The store employed no one who was able to repair bicycles. Patch repaired approximately five or six bikes per year for the store. Customers would bring their bicycles to the store and the store employees would write up a tag indicating the apparent problem. Patch would pick up the bicycles on his way home from work. After completing the necessary repairs Patch would return the bicycles to the store, informing them of the work performed and the charge required. The hardware store would often not directly pay Patch for his labor, but instead would credit his store account.

Sometime in 1979, James Lloyd brought his bicycles to the Coast to Coast Hardware Store for repair. Patch picked up the bicycles at the store and took them to his garage to repair. Patch completed the repairs, returned the bicycles to the store and allegedly charged approximately $18 for his efforts. Lloyd picked the bicycles up at the store.

In 1982, Lloyd was injured while riding a bicycle, allegedly repaired by Patch. Lloyd sued Patch and other respondents claiming his injuries were the direct result of the negligent bicycle repair of Patch and the negligence or strict liability of the other respondents.

At the time of Lloyd's accident, a policy of personal liability insurance was in force between Patch and appellant. Appellant brought a declaratory judgment action against Patch and the other respondents claiming the policy did not provide coverage for the incident because of the business pursuits exclusion in the policy. The parties moved for summary judgment. The trial court entered summary judgment determining the policy provided personal liability coverage for Patch in connection with the injuries sustained by Lloyd.

## ISSUE

Did the trial court err in concluding Patch's personal liability insurance policy provided liability coverage for the injuries sustained by Lloyd?

## ANALYSIS

1. On appeal from a summary judgment, we must determine whether there are any genuine issues of material fact,

and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

Appellant contends the trial court erred in not determining the business pursuits exclusion in the personal liability insurance policy excluded liability coverage for Patch's alleged negligence in repairing Lloyd's bicycle.

The personal liability coverage under Patch's policy states:

*Coverage L—Personal Liability*
*We* pay, up to *our* limit of liability, all sums for which any *insured* is legally liable because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies.

The business pursuits exclusion in the policy states:

This policy does not apply to liability:
*   *   *   *   *   *

f.  resulting from activities in connection with an *insured's business,* except as provided under Incidental Liability and Medical Payments Coverages
* * *.

The policy defines business to mean

a trade, profession, or other occupation including farming, all whether full or part time, or the rental of any property to others.

The policy also provides Incidental Liability And Medical Payments Coverage, stating:

This policy provides the following Incidental Liability and Medical Payments Coverages.
*   *   *   *   *   *

7.  *Incidental Business Coverage—We* pay for *bodily injury* or *property damage* resulting from:
*   *   *   *   *   *

e.  activities in conjunction with *business* pursuits which are ordinarily considered *non-business* in nature.

■ In evaluating insurance coverage and exclusions within a policy the general principles of insurance policy interpretation require: (a) an insurer denying coverage because of a policy exclusion bears the burden of proof, *Milwaukee Mutual Insurance Co. v. City of Minneapolis,* 307 Minn. 301, 307, 239 N.W.2d 472, 475 (1976); and (b) insurance exclusion clauses be strictly interpreted against the insurer. *Home Mutual Insurance Co. v. Snyder,* 356 N.W.2d 780, 783 (Minn.Ct.App.1984).

Appellant contends the business pursuits exclusion in the policy excludes coverage for Patch's bicycle repair of Lloyd's bicycle. In *Allied Mutual Casualty Co. v. Askerud,* 254 Minn. 156, 94 N.W.2d 534 (1959), the supreme court interpreted a business pursuits exclusion in a comprehensive personal liability policy. In *Askerud,* the insured and a close friend agreed to build a home on property owned by the insured with the understanding the friend would buy the house if he could obtain financing. Both the insured and his friend were employed full-time with a meat company. The insured's father, who volunteered to assist, was injured while working on the property. The insurer contended the home building was a joint business venture for profit and should be excluded from coverage under the business pursuits exclusion. The supreme court rejected this argument and said:

We are of the opinion that the business contemplated by the printed provisions of the policy was a type of activity in which persons regularly engage for the purpose of earning a livelihood or for gain such as a 'trade, profession or occupation.' This criteria is certainly not met by the spare time endeavors of the insured in this case. In excluding 'business pursuits' the policy intends to exclude coverage of commercial enterprises rather than the type of activity here demonstrated.

*Id.* at 163, 94 N.W.2d at 539–40.

In *Askerud,* the supreme court's interpretation of the business pursuits exclusion indicated the exclusion would normally apply to "a type of activity in which persons regularly engage for the purpose of earn-

ing a livelihood or for gain such as a 'trade, profession or occupation.'" *Id.* at 163, 94 N.W.2d at 539–40. The exclusion in the policy in this matter is defined as a business, a trade, profession, or other occupation, whether full or *part* time.

Patch earns his main livelihood through his employment with the construction company. In his spare time he repairs bicycles as a hobby, mainly on weekends and nights. The repairs are made in his residential garage. He does not advertise and has taken no training or repair courses and does not maintain stock of bicycle parts or equipment. He has no standard charges for his work or his time and frequently fixes bikes for nothing and does not maintain records of the repairs, parts and charges. Patch is unaware whether income is generated by his repair activities.

■ Although Patch repaired the bike for a Coast to Coast Hardware Store and charged for the repairs, we cannot conclude Patch's repair activities were for the purpose of earning a livelihood, or amounted to a trade, profession or occupation. The record does not document that Patch derived any profits or regular income from his repair activities. On this record we cannot conclude Patch's repair activities amounted to a "commercial enterprise" intended to generate profits or financial gain. Since exclusion clauses are strictly construed, we determine that Patch's activities of repairing bicycles does not amount to a part time business pursuit contemplated by the exclusion.

■ 2. Even if Patch's bicycle repair activities could be construed as a "business pursuit," coverage would still be afforded under the policy because it provides incidental liability and medical payments coverage for bodily injury or property damage resulting from "activities in conjunction with business pursuits which are ordinarily non-business in nature."

The Minnesota Supreme Court has construed what activities in conjunction with business pursuits are ordinarily considered "non-business in nature" for purposes of

insurance coverage. In *Milwaukee Mutual Insurance Co. v. City of Minneapolis*, 307 Minn. 301, 239 N.W.2d 472 (1976), a police officer was injured, just prior to going on duty, when another officer demonstrated the trigger pull on a gun in the police roll call room. It was disputed whether the demonstrating officer's homeowner's policy provided coverage for the incident. The supreme court affirmed the trial court's ruling that the testing of a trigger pull on a gun immediately before the involved officer went on duty was a business activity ordinarily incident to a non-business pursuit and therefore was not excluded from coverage under the homeowner's policy because of the business pursuits exclusion. The supreme court said that to preclude coverage under the business pursuits exclusion: "It must be an act that the insured would not normally perform but for the business, and must be solely referrable to the conduct of the business." *Id.* at 309, 239 N.W.2d at 476 (emphasis deleted). The supreme court accepted the trial court's reasoning that "hunting, weapon collecting and target shooting are but examples of non-business pursuits to which activities such as pistol handling and trigger spring checking * * * are ordinarily incident." *Id.* at 307, 239 N.W.2d at 475.

In *Bankers Standard Insurance Co. v. Olwell*, 309 N.W.2d 799 (Minn.1981), a couple with four children of their own provided day care at their home for two children and were paid $50 per week. The two day care children were injured while under their care. It was disputed whether the couple's homeowners policy provided coverage for the injuries. The couple conceded the day care activity was a business. The supreme court ruled the homeowner's policy provided coverage finding that although the care and supervision of the children for compensation was a business pursuit, it was an activity ordinarily incident to non-business pursuits.

In view of *City of Minneapolis* and *Olwell*, we conclude that even if Patch's bicycle repair activities could be construed as a "business pursuit", the personal liability

insurance policy would still provide coverage for bodily injury or property damage sustained by Lloyd because Patch's bicycle repair activities are ordinarily incident to non-business pursuits.

### DECISION

The trial court did not err in concluding Patch's personal liability insurance policy issued by appellant provided coverage for Patch's alleged negligent bicycle repair of Lloyd's bicycle because the repair activity was not a business pursuit, and even if the repair activity could be construed as a business pursuit, the policy would still afford coverage because bicycle repair is an activity ordinarily incident to non-business pursuits.

Affirmed.