Andrew C. GROSSMAN, et al., Respondents (C1–90–591), (C8–90–605), Appellants (C2–90–1104),

Paul Baszucki, et al., Plaintiffs (C2–90–1104),

Ernest I. Reveal, et al., Respondents (C1–90–591), (C8–90–605),

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant (C1–90–591), Respondent (C8–90–605), (C2–90–1104),

Great American Insurance Companies, et al., Respondent (C1–90–591), (C2–90–1104), Appellants (C8–90–605),

Federal Insurance Co., et al., Allstate Insurance Co., Respondents,

St. Paul Fire and Marine Insurance Co., et al., Respondents (C1–90–591), (C8–90–605), Defendants (C2–90–1104).

Nos. C1–90–591, C8–90–605 and C2–90–1104.

Court of Appeals of Minnesota.

Oct. 16, 1990.

Review Denied Dec. 20, 1990.

William Z. Pentelovitch, Wayne S. Moskowitz, Maslon, Edelman, Borman & Brand, Minneapolis, for Andrew C. Grossman, et al., and Paul Baszucki, et al.

John F. Eisberg, Robins, Kaplan, Miller & Ciresi, St. Paul, for Ernest I. Reveal, et al.

Willard L. Converse, Peterson, Bell, Converse & Jensen, St. Paul, for American Family Mut. Ins. Co.

Richard J. Chadwick, Robert E. Kuderer, Chadwick, Johnson & Condon, Minneapolis, for Great American Ins. Companies, et al.

Lindsay G. Arthur, Jr., Katherine L. MacKinnon, Arthur, Chapman & McDonough, Minneapolis, for Federal Ins. Co., et al.

Raymond L. Tahnk–Johnson, Meagher & Geer, Minneapolis, for Allstate Ins. Co.

Barry G. Vermeer, Wade R. Wacholz, Gislason, Dosland, Hunter & Malecki, Minnetonka, for St. Paul Fire and Marine Ins. Co., et al.

Considered and decided by LANSING, P.J., and KALITOWSKI and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Steven B. Liefschultz and L & D Management, Inc. brought claims against former limited partners of Liefschultz. The partners tendered defense of Liefschultz's claims to the partnership insurers and to their various personal homeowner's insurance carriers.

The insurers all denied coverage and the defendant partners commenced declaratory judgment actions. The trial court determined that appellant American Family Mutual Insurance Co., which had written the primary business policy covering the partnership and its individual partners, was obligated to provide a defense. The trial court further found that appellant Great American, which issued an excess insurance policy to the partnership and its individual partners, had failed to meet its contractual duty to defend because it had not stepped into the breach when American Family refused to defend. Finally, the trial court found the insurer respondents, which had each issued individual homeowner's policies to individual partners, were not obligated to provide a defense.

The partnership's insurance carriers petitioned this court for discretionary review, which was granted. The limited partners filed a separate appeal. This court consolidated the discretionary review and the appeal. We affirm the finding of non-liability on the homeowner's policies and reverse the finding of coverage on the business policies.

## FACTS

In July of 1983 the limited partners invested in Ridgewood Investment Group, a general partnership organized and promoted by Steven B. Liefschultz. Ridgewood was formed to acquire and run a 312–unit apartment complex in Plymouth. The limited partners provided the necessary capital, and the management was to be provided by Liefschultz, as managing partner, and L & D Management, Inc., a company owned by Liefschultz.

In January 1988, the limited partners came to believe the apartment complex was being mismanaged, which Liefschultz denied. Then, according to Liefschultz's complaint against the limited partners,

> 2. Beginning in early 1988, defendants, with the assistance of an attorney who claimed to be representing both the partnership and the individual defendants, conspired to:
>
> a. defraud Liefschultz of his rights as managing general partner and of his interest in the partnership,
>
> b. drive down the value of the property to create a claim for damages against Liefschultz,
>
> c. defame Liefschultz, and
>
> d. replace him as managing partner, and L & D as managing agent, with a member of their group.

The original complaint alleged 23 counts. These 23 counts can be broken down into seven causes of action: (1) conspiracy to defraud, (2) tortious interference with contract, (3) breach of fiduciary duties, (4) breach of partnership agreement, (5) breach of management agreement, (6) defamation, and (7) a claim for an accounting. In May of 1989, Liefschultz moved to amend his complaint by dismissing 18 of the 23 counts. The effect of the amended complaint was to eliminate claims (6), the defamation claim, and (7), the request for an accounting.

The limited partners tendered the defense of the Liefschultz action to their liability insurers. The insurers denied coverage. The policyholders commenced a declaratory judgment action in December of 1988 against the issuers of both the primary and excess partnership policies and the personal policies. All of the parties sought summary judgment.

### A. *Partnership Policies*

1. Primary Policy

Appellant American Family issued a policy which named as insureds Ridgewood Investment Group and the individual partners as partners. The American Family policy stated that it "protects you and your business against claims that result from

injury to *others* \* \* \*." (Emphasis added). The policy continued:

### COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement. We will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies. The personal injury or advertising injury must be caused by an offense committed during the policy period and in the coverage territory. We have the right and duty to defend any suit seeking those damages.

\*      \*      \*      \*      \*      \*

d. this insurance applies to personal injury only if caused by an offense arising out of the *conduct of your business* and excluding advertising, publishing, broadcasting or telecasting done by or for you.

(Emphasis added).

American Family argued that its policy did not provide coverage for what it characterized as an intra-partnership fight. The trial court determined that American Family had been obligated to defend all of the limited partners against the Liefschultz complaint until the amended complaint and continued to have a duty to defend five of the limited partners after the complaint was amended. The trial court determined the policyholders were entitled to recover damages against American Family for breach of its contractual duty to defend.

### 2. Excess Policy

Appellant Great American issued a policy of excess insurance, listing and insuring as named insureds the partnership and the partners of Ridgewood Investment Group "as partners." The Great American policy provides:

I. Coverage: The company will *pay* on behalf of the insured the ultimate *net loss in excess of the underlying limit or retained limit* which the insured shall become legally obligated to pay, \* \* \* caused by or arising out of an occurrence happening anywhere. \* \* \*

II. Defense Settlement: With respect to any occurrence not covered by underlying insurance, but covered by the terms and conditions of this policy, the company shall:

(a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; \* \* \*

(Emphasis added).

Great American argued that its policy does not provide coverage for a dispute between partners, and further argued that its liability, if any, was only as an excess insurer. The trial court determined that Great American had a duty to defend against Liefschultz's claims because American Family had refused to do so. The trial court determined that the limited partners were thus also entitled to recover damages against Great American for breach of its contractual duty to defend.

### B. *Personal Homeowner's Policies*

The limited partners were insureds under homeowner's policies issued by the respondent insurers. Each of the personal policies contained "business pursuits" exclusions. Under these exclusions, there is no liability insurance for claims that arise out of the insureds' business, occupation or profession. Typical of the exclusions is the Sun Insurance Office Ltd. policy, which provides:

This [policy] does not provide coverage for:

\*      \*      +      \*      \*      \*

2. the following business exposures:

a. business pursuits or business property of an insured.

The trial court determined that the personal insurance carriers had no duty to defend because the business pursuits exclusions applied.

### ISSUES

1. Did the trial court err in determining that the partnership policies provide cover-

age for the claims made by Liefschultz against the limited partners?

2. Did the trial court err in determining that the excess insurer, Great American, must provide a defense because American Family refused to do so?

3. Did the trial court err in determining that the business pursuits exclusions of the personal policies applied?

## ANALYSIS

■ On review of a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). There is no dispute in the present case regarding the facts. The issues presented involve interpretation of insurance policies. Interpretation of an insurance policy is a question of law which the trial court may properly decide on a motion for summary judgment and which this court reviews de novo on appeal. *See Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978).

## I.

■ The rules of construction of insurance policies are well established. First, such policies are similar to other contracts. The policy is a matter of agreement between the parties, and a court's function is to determine what the parties' agreement was and to enforce it. *Fillmore v. Iowa Nat'l Mut. Ins. Co.*, 344 N.W.2d 875, 877 (Minn.App.1984). The extent of an insurer's liability is governed by the contract into which the parties have entered. *Bobich v. Oja*, 258 Minn. 287, 294–95, 104 N.W.2d 19, 24–25 (1960). Any ambiguities in the policy are to be strictly construed against the insurer, since the insurer drafted the agreement. *Id.* at 294, 104 N.W.2d at 24. However, a court may not read an ambiguity into the plain language of a policy in order to create coverage where none otherwise exists. *Id.* In construing an insurance contract, the policy must be considered as a whole. *Henning Nelson Constr. Co. v. Firemen's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn.1986). In addition, Minnesota has adopted the reasonable expectations of the insured as a basis for determination of coverage. *See Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 278 (Minn. 1985). There is no reason in logic why the reasonable expectations of the parties cannot limit coverage. *See Id.* at 278. The duty to defend under an insurance policy arises "when any part of the claim is 'arguably' within the scope of the policy's coverage." *Josten's, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165 (Minn.1986). A duty to defend may also arise from an undertaking to defend contained in the policy.

■ For a variety of reasons, none by itself wholly satisfactory, but cumulatively compelling, we do not believe the partnership's primary insurer is required to defend. First, American Family did not agree to assume the risk of intra-partnership litigation. The policy's insuring clause provides coverage for the partnership and the individual partners against claims brought by "others." We are not convinced by the policyholders' argument that "others" includes named insureds under the partnership policy. In interpreting an insurance policy, we must give the words the parties have used their ordinary and usual meaning in order to give effect to the parties' intention as it appears from the language used. *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972). When an insurance policy states that it provides coverage to specific named insureds against claims brought by "others", the plain language of the policy requires that "others" be construed to mean people who are not named insureds, except where public policy compels a different reading, as it would with a family automobile insurance policy.

Alternatively, even if "others" did include named insureds, we cannot say that the injuries alleged in this case arise out of the "conduct" of their business. While it is true that but for their participation in the partnership these parties would not have incurred the claimed loss, the business of

the partnership does not include internecine legal strife.

The policyholders, however, present an interesting hypothetical. What if one of them were injured in a slip-and-fall accident on partnership property? The policyholders suggest there would then be no basis for denying coverage. From this, the policyholders argue the present lawsuit is not barred.

We disagree. If coverage lies in the hypothetical, it would be because the claim would be one arising routinely out of the partnership's conduct of its business of property ownership; the hypothetical involves the type of claim the liability insurance of a property-owning partnership is supposed to cover. The present case, in contrast, does not arise out of the partnership's ordinary business activities; it arises out of civil war between the partners. It is the sort of claim neither the partnership nor the partnership's primary insurer reasonably expected to cover originally. The insureds, confronted by a more artfully drawn policy, could not prevail on their coverage claim arguing reasonable expectations. We believe there is a backspin to the doctrine that limits the insurer's obligations.

Finally, public policy considerations support the conclusion that the partnership's insurer provides no coverage in this intra-partnership feud. Generally, an insurer will only assume those risks that are beyond the effective control of its insured. In discussing "elementary insurance principles", the Minnesota Supreme Court has stated:

In exchange for the payment of a premium, an insurer assumes certain risks that otherwise would be the obligation of the insured. In order to have predictable and affordable insurance rates, the insurer's assumptions of risk are usually limited to those beyond the 'effective control' of the insured.

*Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 233–34 (Minn.1986) (discussing commercial general liability policies). Forcing a partnership insurer to assume the risk of bitter and protracted litigation between partners would destroy the insurer's ability to set predictable and affordable premiums. *See id.* Indeed, at oral argument, counsel indicated that coverage for intra-partnership claims is not available as a free-standing policy. We believe this demonstrates the unpredictable costs of covering such a risk.

## II.

We turn now to the excess policy. The coverage issue here is whether the excess insurer is obligated to provide a defense.[1]

[T]he general rule is that an excess liability insurer is not obligated to participate in the defense until the primary policy limits are exhausted. But if the primary insurer denies coverage, the excess insurer would be obligated to defend.

14 *Couch on Insurance 2nd*, § 51:36, at 446–47 (footnotes omitted). *See Continental Casualty Co. v. Synalloy Corp.*, 667 F.Supp. 1523, 1540 (S.D.Ga.1983), *aff'd* 826 F.2d 1024 (11th Cir.1987); *American Motorists Ins. Co. v. Trane Co.*, 544 F.Supp. 669, 692 (W.D.Wis.1982), *aff'd* 718 F.2d 842 (7th Cir.1983). The Great American excess policy also provides a separate coverage for the cost of legal defense; it must "defend any suit." Great American's obligation to provide a defense thus must be determined from other language in the policy and the language of the complaint. *See Atlantic Mut. Ins. Co. v. Judd Co.*, 380 N.W.2d 122, 126 (Minn.1986).

There is in this policy no restriction parallel to the primary insurer's limitation to "claims by others" or "conduct of the partnership." The policy, however, covers the partnership and the partners "as partners" and "only with respect to the partner's

---

1. There is no obligation to pay a judgment in any event because Great American's "retained limit" clause states

if the insurance offered by such underlying insurance is inapplicable to the occurrence, [Great American is liable for the amount ex-

ceeding] the amount specified in the declarations as the retained limit.

Here, the retained limit amount is $5 million, which is greatly in excess of the damages alleged in this case.

liability as [a partner]." The Liefschultz claims, with the amendment of the complaint, are essentially breach of contract claims by one partner against other partners. The assertion by Liefschultz is that other partners, the defendants in the underlying action and the plaintiffs in this action, acted contrary to their partnership obligations. There is no claim of a liability arising from within and against the partnership. Thus, the complaint, alleging "ultra vires" acts, by its terms takes the claim out of the obligation to defend imposed by the policy.

The discussion of reasonable expectations and of public policy pertaining to the primary partnership policy are equally applicable to the excess policy. For much the same reasons that American Family is not obligated to provide a defense against these intra-partner claims pursuant to the partnership's primary policy, Great American is not obligated to provide a defense pursuant to the excess policy.

## III.

■ Turning now to the personal policies, we find each contained "business pursuits" exclusions. The purpose of business pursuits exclusions in homeowner's policies is to delete

> coverage which is not essential to the purchasers of the policy and which would normally require specialized underwriting and rating, and thus keeps premium rates at a reasonable level.

*Krings v. Safeco Ins. Co. of America*, 6 Kan.App.2d 391, 393, 628 P.2d 1071, 1074 (Kan.Ct.App.1981) (citing Frazier, *"Business Pursuits" Exclusion in Personal Liability Insurance Policies*, 572 Ins.L.J. 519, 520 (1970); Frazier, *The Business–Pursuits Exclusions Revisited*, 649 Ins. L.J. 88, 89 (1977)). Courts have taken divergent views on what constitutes a business pursuit. *Compare Brickell v. United States Fire Ins. Co.*, 436 So.2d 797, 801 (Miss.1983) (suit arising from insurance agent's activities in connection with automobile dealership not excluded; insured's business was insurance, not automobile sales) with *Krings*, 6 Kan.App.2d at 393,

628 P.2d at 1075 (suit arising from insurance executive's activities as chairman of the board of Kansas Savings and Loan Association was "business pursuit" where insured received honorarium of $25 to $50 per meeting and owned common stock in association).

The Minnesota Supreme Court has construed business pursuits exclusions similar to the ones at issue in this case. *See Farmers Ins. Exchange v. Sipple*, 255 N.W.2d 373 (Minn.1977); *Milwaukee Mut. Ins. Co. v. City of Minneapolis*, 307 Minn. 301, 239 N.W.2d 472 (1976); *Allied Mut. Casualty Co. v. Askerud*, 254 Minn. 156, 94 N.W.2d 534 (1959). The *Milwaukee Mutual* court stated:

> [I]t is the nature of the particular act involved and its relationship, or lack of relationship, to the business that controls. Personal acts, such as pranks, do not become part of a business pursuit, so as to be outside of the coverage, merely because performed during business hours and on business property. In order for an act to be considered part of a business pursuit it must be an act that contributes to, or futhers the interest of, the business and one that is peculiar to it. *It must be an act that the insured would not normally perform but for the business, and must be solely referrable to the conduct of the business.*

*Id.* 307 Minn. at 309, 239 N.W.2d at 476 (emphasis in original) (quoting Frazier, *The "Business Pursuits" Exclusion In Personal Liability Insurance Policies: What The Courts Have Done With It*, 572 Ins. L.J. 519, 533–34 (1970)).

This court has held that casual activities not intended for profit are not excluded under the business pursuits exclusion. *See Reinsurance Ass'n of Minnesota v. Patch*, 383 N.W.2d 708 (Minn.App.1986). In *Patch*, this court determined that bicycle repairs conducted by an insured did not constitute a commercial enterprise intended to generate profits or regular income where the insured performed the repairs during his spare time in his residential garage, did not advertise, had taken no training or repair courses, did not maintain a stock of parts or equipment, did not have standard charges for his work or time,

frequently fixed bicycles at no charge, and derived no profits or regular income from his repair activities. *See id.* at 712.

*Patch* demonstrates the distinction between business and non-business activities. Although Patch may have earned a modest sum of money by repairing bicycles, this activity would be more accurately described as a hobby than as a business. *See Patch*, 383 N.W.2d at 712. In their spare time, some people hunt. Some people golf. Patch repaired bicycles.

In contrast, the limited partners in the present case operated, for profit, a 312–unit apartment complex. Premiums for homeowner's policies would be inflated unreasonably if the homeowner's insurance pool were required to assume risks attendant upon commercial ventures such as this.

It should be noted that one of the personal policies, the Allstate policy, was an umbrella policy. To the extent there is no coverage through the underlying insurers, an umbrella policy carrier is ordinarily obligated to provide first-dollar (drop down) coverage. In the present case, however, the coverage under the Allstate policy is limited to personal activities of the insured. Because the claims did not arise out of the personal activities of the insured, there is no coverage under the Allstate policy.

American Family alleges that certain portions of the limited partners' reply brief were inappropriately submitted on appeal because they are not part of the record. Our evaluation of the issues in this case leads us to conclude that consideration of the contested documents would not alter our result.

### DECISION

The policies issued to the partnership do not provide coverage for claims made by one partner against the other partners. The business pursuits exclusions of the homeowner's policies bar coverage for the claims at issue. None of the policies involved provides coverage.

Affirmed in part and reversed in part.