# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 97-4028
No. 97-4032

———————

| | |
|---|---|
| Hawkins Chemical, Inc., a Minnesota corporation; The Lynde Company, a Minnesota corporation, | * * * * |
| Plaintiffs - Appellees, | * * |
| | * Appeals from the United States |
| | * District Court |
| v. | * for the District of Minnesota. |
| | * |
| Westchester Fire Insurance Company, a New York corporation; North River Insurance Company, a New Jersey corporation, | * * * * * |
| Defendants - Appellants. | * |

———————

Submitted: May 11, 1998
Filed: October 21, 1998

———————

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.

———————

JOHN R. GIBSON, Circuit Judge.

North River Insurance Company and Westchester Fire Insurance Company appeal from a summary judgment entered in favor of Hawkins Chemical, Inc., and its

subsidiary, The Lynde Company.  Lynde occupied a downtown Minneapolis warehouse owned by Hawkins, a chemical distributor.  A fire in February 1995 destroyed the warehouse and sent toxic smoke and fumes to the surrounding area.  Those injured by the smoke and fumes pursued a class action against Hawkins, which tendered the defense of the suit to North River and Westchester.  Both insurers denied coverage and refused to defend Hawkins, claiming that their respective policies excluded this sort of liability under a "total pollution exclusion."  Hawkins brought this diversity action in response.  Applying Minnesota law, the district court[1] found for Hawkins.  The court adopted the recommendations of the magistrate judge[2] and awarded Hawkins the amounts it paid to settle the class action as well as the fees and expenses incurred for defending it.  Following the parties' stipulation to his jurisdiction, the magistrate judge also awarded Hawkins attorneys' fees incurred in this action for establishing the insurers' breach of the duty to defend under the insurance contracts.  We affirm.

North River and Westchester present distinct legal claims based on different facts.  North River first sold Hawkins a one-year general liability policy in August 1993, naming Lynde as an insured.  North River renewed the policy in September 1994, thus covering Hawkins from September 30, 1994, to September 30, 1995.  The policy generally required North River to defend and indemnify Hawkins from claims for "bodily injury," "property damage," and "personal injury" as the policy defined those terms.  Certain aspects of North River's coverage were limited by a pollution exclusion outlined in the policy jacket.  A "total pollution exclusion" endorsement

---

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

[2]The Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

further limited North River's coverage; unlike the pollution exclusion in the policy jacket, the endorsement did not include an exception for "hostile fire"[3] incidents.

North River's appeal depends upon the endorsement's validity; without the endorsement, North River's policy encompasses the hostile fire in question. Minnesota law requires insurers to file policies and provisions in advance with the State's Commissioner of Commerce. See Minn. Stat. § 70A.06 (1994).[4] Several months before North River sold its policy to Hawkins, the Commissioner's office had declared that pollution exclusions in general liability policies must contain an exception for hostile fire. The decision followed a request by the Insurance Services Office, Inc. (ISO) -- a trade association of property and casualty insurers -- to approve a "form" "total pollution exclusion" endorsement without a hostile fire exception. An analyst working under the Commissioner denied the ISO's request, citing the Department's longstanding policy that general pollution exclusions must make exceptions for hostile fire. Henceforth, any individual insurer wishing to use such an endorsement would need the approval of the Department, which would approve "reasonable" filings on an individual basis.

North River sought no such approval of the endorsement attached to Hawkins's policy. Nevertheless, it attempted to prove to the district court that the Commissioner had in 1989 approved a set of forms that included a "total pollution exclusion" endorsement outlined in wording nearly identical to that of Hawkins's endorsement in

---

[3]A hostile fire is one which "breaks out in [a] place not anticipated" or "escapes into [an] area not expected." Black's Law Dictionary 664 (5th ed. 1979).

[4]Although section 70A.06's language strictly requires only the filing of insurance rates and rate adjustments, the entire insurance contract is subject to the Commissioner's supervision. Sawyer v. Midland Ins. Co., 383 N.W.2d 691, 693-94 (Minn. Ct. App. 1987). Premia can only be evaluated "relative to the coverage afforded." Id.

the 1993 policy. The parties dispute this factual contention, and the district court ultimately rejected it. Alternatively, the court held the North River/Hawkins endorsement invalid regardless of the Commissioner's alleged actions in 1989; because "total pollution exclusion" endorsements without hostile fire exceptions were specifically disapproved, North River could not use the Commissioner's earlier approval -- if any -- to "resurrect" currently-disapproved policy language. North River's endorsement was therefore void, and Hawkins's coverage was limited only by the policy jacket's pollution exclusion. So interpreted, the policy covered "property damages" and "bodily injury" -- but not "personal injuries" -- caused by the fire's smoke and fumes.

While North River served as Hawkins's primary insurer, Westchester sold Hawkins a one year "umbrella" policy to begin September 1993. The umbrella policy provided excess coverage to the North River general liability policy as well as certain coverage (not relevant to our decision) that North River's policy did not provide. The policy included a pollution exclusion similar to that contained in North River's policy jacket; specifically, the exclusion provided an exception for hostile fire incidents. In September 1994, Westchester and Hawkins agreed to renew the policy for one year. The magistrate judge's report and recommendation, adopted in full by the district court, stated that neither the binder issued to Hawkins nor its accompanying cover letter identified any reduction in Hawkins's coverage.

Westchester and its agent later attempted to add an "Endorsement No. 3" to the policy's terms. Endorsement No. 3 closely resembled North River's "total pollution exclusion" endorsement; in other words, it broadened the pollution exclusion by eliminating the hostile fire exception.[5] Hawkins paid the premium on the renewed policy on November 2, 1994. On November 11, 1994, and November 30, 1994,

---

[5]As an umbrella carrier, Westchester was not obligated to submit the broadened pollution exclusion to Minnesota's regulatory authorities.

Westchester's agent sent Hawkins letters asking it to sign and return Endorsement No. 3. Hawkins's president finally signed the endorsement on December 9, 1994 -- some five weeks after Hawkins's payment. Throughout, Westchester provided Hawkins with less than complete notice of this change in its policy. Only a careful reading of the endorsement (side by side with the policy jacket's pollution exclusion) reveals that it removes the hostile fire exception from the earlier pollution exclusion. At the top of the page, the endorsement itself stated the following: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. TOTAL POLLUTION EXCLUSION - UMBRELLA POLICY EXCLUSION J IS REPLACED BY THE FOLLOWING." This language did not describe the substance of the change wrought by Endorsement No. 3. Further, Westchester provided no other indication to Hawkins that its coverage was being reduced.

When Westchester denied coverage of the claims arising from the warehouse fire, Hawkins brought this suit. The district court ruled in favor of Hawkins in several respects. First, it ruled that Westchester's endorsement had created a "substantial change" in Hawkins's coverage and that Hawkins had received inadequate notice of this change under Minnesota law. Alternatively, the court found Westchester's attempted modification of the insurance contract to be unsupported by consideration and thus unenforceable. Third, it awarded Hawkins attorneys' fees in this action for establishing Westchester's breach of the duty to defend Hawkins.

## I.

Both North River and Westchester appeal the district court's grant of summary judgment to Hawkins. We review de novo a grant of summary judgment. Kaler v. Craig (In re Craig), 144 F.3d 593, 595 (8th Cir. 1998). In so doing, we view the facts and all inferences drawn from them in the light most favorable to the non-moving party. Barker v. Ceridian Corp., 122 F.3d 628, 632 (8th Cir. 1997). The district court may grant summary judgment only if the case presents no genuine issue of material fact and

if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We also review de novo the district court's interpretations of state law, without deference. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

## II.

North River contends that an insurer's failure to file an insurance form does not render the policy void under Minnesota law; that Hawkins lacks a "private right of action" to enforce the State's insurance regulations; and that North River complied with Minnesota's regulatory scheme in any event. We address these arguments in turn.

We last addressed North River's first argument some twenty-five years ago. We held then that an insurance policy or provision not filed with the Commissioner of Insurance is unenforceable. See Miller v. National Farmers Union Property & Cas. Co., 470 F.2d 700, 704 (8th Cir. 1972) (construing Minn. Stat. § 70.38 (1968) (later repealed and reenacted as sections 70A.06 and 70A.07)). North River claims that subsequent changes in Minnesota law undermine Miller's holding. Minnesota's courts and legislature are of course free to reject our reading of state law, and we are bound by any such rejection. We nevertheless conclude that Minnesota law has embraced Miller and that Miller's reasoning determines the validity of the policy provision at issue. See Anderson v. Minnesota Ins. Guar. Ass'n, 520 N.W.2d 155, 160 (Minn. Ct. App. 1994) (citing Miller favorably and noting that unfiled or unapproved policy provision is void), rev'd on other grounds, 534 N.W.2d 706 (Minn. 1995); In re State Farm Mut. Auto Ins. Co., 392 N.W.2d 558, 564 (Minn. Ct. App. 1986); Sawyer v. Midland Ins. Co., 383 N.W.2d 691, 695 (Minn. Ct. App. 1986). In this case, North River wrote a specifically disapproved endorsement into Hawkins's policy. The

endorsement therefore lacks legal force, and North River's pollution exclusion retains the hostile fire exception required by state law.[6]

North River next contends that Hawkins has no right to enforce the State's regulatory scheme against its own insurer. See Jader v. Principal Mut. Life Ins. Co., 975 F.2d 525, 528 (8th Cir. 1992) (when Commissioner has approved rates, insured lacked private cause of action against insurer under Minnesota statute requiring premium reduction where companies have coordinated benefits); Morris v. American Family Mut. Ins. Co., 386 N.W.2d 233, 233-38 (Minn. 1986) (insured lacks cause of action under Minnesota's Unfair Claims Practices Act). This argument lacks merit. Hawkins neither seeks nor needs a private cause of action to avoid the disapproved "total pollution exclusion." Hawkins does not seek damages for North River's violation of Minnesota's insurance statutes. It merely asked the district court to declare and enforce the terms of two insurance policies. Because North River's pollution endorsement was void under Minnesota law, the district court lacked the power to enforce it.

We are similarly unpersuaded by North River's claim that it abided by the State's regulatory scheme. North River contends that the district court improperly resolved an issue of material fact by finding that the Commissioner did not in 1989 approve a "total pollution exclusion" that lacked a hostile fire exception. We conclude that the Commissioner's actions in 1989 are immaterial. In 1993, the regulatory authorities determined unequivocally that the language later contained in North River's endorsement was void and unenforceable absent the Commissioner's consent on a case-

---

[6]Our analysis is not affected by the Commerce Commissioner's later order that insurers generally need not file forms for policies covering commercial insureds. The Commissioner promulgated this order in January 1995, but North River added the updated pollution exclusion to Hawkins's policy the previous September. Neither the Commissioner's order nor North River's brief suggest that the order applied retroactively.

by-case basis.  The Commissioner's office disapproved a provision essentially identical to that which North River foisted upon Hawkins.  It is undisputed that North River never sought or obtained any subsequent approval of its pollution exclusion.

In a similar vein, North River argues that it never needed the Commissioner's approval because Hawkins's pollution endorsement was a "manuscript" rather than a "form."  This distinction is of no help to North River.  It is true that the Commissioner instructed insurers not to file "forms tailored for an individual insured."  Yet North River's "total pollution exclusion" endorsement falls outside this exempt category.  First, the endorsement was not "tailored" for Hawkins in any meaningful sense; it merely listed the parties' names, Hawkins's policy number, and the policy's effective date.  Although the risk inherent in Hawkins's particular business may have spurred North River to broaden the policy's pollution exclusion by attaching the "total pollution exclusion" endorsement, this fact alone does not indicate that North River "tailored" the endorsement in question.  Second, North River attached the same endorsement to the policies of some twenty other Minnesota insureds.  Whatever the propriety of such widespread use, this fact belies North River's characterization of the "form" as a "manuscript."  We agree with the magistrate judge that "the mere fact that North River chooses to call the form a 'manuscript' does not alter the fact that it is a form, i.e., 'a fixed order of words,' which North River attaches at its discretion to the insurance policies it sells." Magistrate Judge's Report and Recommendation of June 26, 1996, at 23 (citing American Heritage Dictionary, Second College Edition).

We have considered North River's other arguments and conclude that they are without merit.

## III.

Westchester's claims similarly lack merit. Westchester first argues that Endorsement No. 3 did not "substantially reduce" Hawkins's coverage under the

umbrella policy and thus did not trigger the insurer's duty under Minnesota law to provide notice of the reduction. See Canadian Universal Ins. Co. v. Fire Watch, Inc., 258 N.W.2d 570, 575 (Minn. 1977). Because the endorsement omitted coverage only for pollution claims arising out of hostile fire rather than omitting coverage for all hostile fire claims, Westchester considers the omission insignificant. The endorsement transformed Hawkins's "absolute pollution exclusion" into a "total pollution exclusion," a change that Westchester describes as "minor" and "isolated" when compared to Hawkins's policy as a whole. We conclude that the reduction is "substantial" for several reasons. As an initial matter, Hawkins is a chemical distributor and stored chlorine and other potentially hazardous substances in its downtown Minneapolis warehouse. The risk associated with Hawkins's business is readily apparent. When Westchester eliminated the hostile fire exception from Hawkins's pollution exclusion, Hawkins suffered a reduction more "substantial" than might be felt by other insureds in other industries or locations. Second, the actions of those who administer Minnesota's regulatory scheme suggest Endorsement No. 3's substantiality. As discussed above, the Department of Commerce prohibited the use of pollution exclusions without hostile fire exceptions, absent prior approval on a case-by-case basis. Although the Department's ruling applied only to general liability carriers and not to umbrella carriers such as Westchester, the ruling indicates that removing the hostile fire exception was not trivial. Third, Westchester itself appeared to view the reduction as significant. It required Hawkins to sign Endorsement No. 3 but not the fifteen other endorsements attached to Hawkins's policy, and its agent responsible for renewing the policy testified that the Endorsement created a "significant difference" in coverage.

Westchester next argues that it adequately notified Hawkins of Endorsement No. 3's substance. When an insurer fails to provide adequate written notice of a reduction in coverage, the purported reduction is void, and any renewal of the policy carries the policy's original terms. Canadian Universal, 258 N.W.2d at 575. A substantial reduction must be explained to the insured in writing, including the fact that coverage

has been reduced. Samuelson v. Farm Bureau Mut. Ins. Co., 446 N.W.2d 428, 431 (Minn. Ct. App. 1989); Benton v. Mutual of Omaha Ins. Co., 500 N.W.2d 158, 160-61 (Minn. Ct. App. 1993) (written notice must apprise reasonable recipient that benefits are being substantially decreased). In this case, Westchester never provided a written description of the change wrought by Endorsement No. 3. The change itself is not apparent until one reads Endorsement No. 3 and its predecessor side by side. Although Endorsement No. 3 bore a warning in bold capital letters that the endorsement changed the policy and constituted a "total pollution exclusion," this warning does not apprise the reader of the substantive difference between Endorsement No. 3 and the "absolute pollution exclusion" that it replaced. In addition, Westchester points to no evidence from which a reasonable factfinder could conclude that Hawkins was aware of Endorsement No. 3's meaning. Hawkins's president testified that he understood Endorsement No. 3 to represent a "slight change" in the policy when he signed it. Setting to one side our conclusion that the change was not "slight" as well as the fact that the president did not sign -- or have notice of -- the endorsement until after Hawkins paid to renew the policy,[7] this statement does not indicate that Hawkins's president understood the endorsement's substance or the fact that coverage was being reduced at all. Accordingly, the reduction is void, and Hawkins renewed the umbrella policy under its previous terms.

We also reject Westchester's argument that it had no duty to defend Hawkins against the class action brought by Hawkins's neighbors. Minnesota law permits an insured to recover attorneys' fees and expenses for successfully bringing an action to enforce the duty to defend. See Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 420 (Minn. 1997); Diocese of Winona v. Interstate Fire & Cas. Co., 89 F.3d 1386, 1398 n.16 (8th Cir. 1996). On this basis, the district court awarded Hawkins attorneys'

_____

[7]We decline to address the district court's alternative holding that the reduction was invalid for lack of consideration. Resolution of the issue would not affect the outcome of this case, and Westchester failed to brief the issue.

fees against both North River and Westchester for establishing in this lawsuit the defendants' breach of the duty to defend Hawkins.

To avoid liability for fees, Westchester relies upon subparagraph (4)(b) of the "Defense Settlement" portion of Hawkins's umbrella policy. That subparagraph removes Westchester's obligation to defend a claim or suit brought against the insured whenever:

> the "Underlying Insurance" is not available or collectible because of the bankruptcy, insolvency or inability or failure to comply with any of its policy obligations of the underlying insurer(s) providing such "Underlying Insurance[.]"

Because North River -- Hawkins's "underlying insurer" -- had a duty to defend Hawkins against the class action arising from the hostile fire and breached that duty, Westchester maintains that it had no duty to "drop down" and defend Hawkins. We reject Westchester's argument because we conclude that North River's breach was not obvious at the time that Hawkins tendered the class action to Westchester.

Minnesota law generally requires an umbrella insurance carrier to defend a party when the party's underlying insurer refuses to do so. See, e.g., Grossman v. American Family Mut. Ins. Co., 461 N.W.2d 489, 494 (Minn. Ct. App. 1990). Westchester has made a contrary agreement with Hawkins, but an insurer's duty to defend arises whenever a claim against the insured is arguably within the scope of the policy. Westling Mfg. Co. v. Western Nat'l Mut. Ins. Co., 581 N.W.2d 39, 47 (Minn. Ct. App. 1998); League of Minn. Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419, 421 (Minn. Ct. App. 1989). When a policy "arguably" covers a claim tendered by the insured, the insurer should defend the claim then "reserve its right to contest coverage based on facts developed at trial." Dixon v. Nat'l Am. Ins. Co., 411 N.W.2d 32, 33 (Minn. Ct. App. 1987).

We conclude that the facts surrounding North River's refusal to defend Hawkins against the class action bring that lawsuit within the arguable scope of Westchester's umbrella policy. Although Westchester's policy unequivocally disclaims the duty to defend Hawkins when Hawkins's underlying insurer breaches its own duty to defend, it was at least <u>arguable</u> that North River had breached no such duty to Hawkins. When North River refused to defend Hawkins against the class action, it relied upon the language of its pollution exclusion, which contained no hostile fire exception. The validity of that exclusion was not finally determined until we issued our opinion today. <u>See</u> Part II, <u>supra</u>. North River's breach therefore does not excuse Westchester's refusal to defend Hawkins against the class action. Because North River had <u>arguably</u> abided by its contract with Hawkins and because Westchester did not validly remove the hostile fire exception from its own pollution exclusion, Westchester was obligated to defend Hawkins. Westchester breached that obligation, and the district court properly awarded attorneys' fees and expenses.

Finally, Minnesota law permits an insured to recover fees and expenses incurred during an appeal of an action to establish an insurer's breach of the duty to defend. <u>See</u>, e.g., <u>Federated Mut. Ins. Co. v. Concrete Units, Inc.</u>, 363 N.W.2d 751, 757-58 (Minn. 1985). In an order dated July 7, 1997, the magistrate judge required North River and Westchester to pay Hawkins's fees and expenses incurred below.[8] Because Hawkins has prevailed, we remand the case to the district court for a determination of the attorneys' fees and expenses incurred by it during this appeal. 8th Cir. R. 47C(b).

---

[8]Adopting the magistrate judge's recommendations, the district court awarded Hawkins $136,302.25 in fees and expenses against North River and $90,868.16 against Westchester.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed, and the case is remanded for a determination of Hawkins's attorneys' fees against each defendant.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.