# In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.

## No. MDL–721 (RLA).

United States District Court,
D. Puerto Rico.

April 15, 1992.

Monita Sterling, Liaison, Hato Rey, P.R., for plaintiffs' Steering Committee.

Luis A. Meléndez–Albizu, Sanchez–Betances & Sifre, Hato Rey, P.R., for Wausau Underwriters Ins. Co.

Elisa A. Fumero, Guaynabo, P.R., for American Mfrs. Mut. Ins. Co.

## ORDER NO. 453
### IN THE MATTER OF DISMISSAL OF CLAIMS AGAINST WAUSAU AND AMERICAN MANUFACTURERS

ACOSTA, District Judge.

Before the Court are several motions filed by Wausau Underwriters Insurance Co. (Wausau)[1] and American Manufacturers Mutual Insurance Co. (American)[2] for

---

**1.** *See* Wausau's Motions ... (docket No. 13133), filed on November 20, 1989; (docket No. 16701), filed on May 10, 1991; and, (docket No. 16705), filed on May 13, 1991; PSC's Opposition ... (docket No. 13539), filed on January 8, 1990; and, (docket No. 16741), filed on May 17, 1991.

**2.** Although there is no motion for dismissal on behalf of American Manufacturers before the Court, (*see* Court Margin Order No. 566, docket No. 13287, filed on December 5, 1989 striking co-defendant's motion for lateness), it appearing that the insurance policy provisions essentially

dismissal of direct claims pursued by the PSC, as well as assigned claims of Norman C. Obrow and Milton F. Fillius, Jr.

## I.  INTRODUCTION

Wausau and American are co-defendants in the second subphase [3] of the Phase III Insurance Trials involving coverage of insurance policies issued to the limited partners of the Grand Hotel Associates.[4] There is no dispute that defendants issued insurance policies to Messrs. Obrow [5] and Fillius [6] which were in effect on December 31, 1986, the day of the fire at the San Juan Dupont Plaza Hotel (Hotel).  There is also no dispute that the claims held by Mr. Obrow against Wausau and Mr. Fillius against American were assigned to the PSC.

Messrs. Obrow and Fillius were defendants [7] in the Phase I Trial in their capacity as limited partners in the Grand Hotel Associates.[8]  Pursuant to the terms of the Settlement Agreement reached after approximately nine weeks of the Phase I Trial,[9] claims held by Messrs. Obrow and Fillius mirror those of Wausau as does the activities of Mr. Fillius in relation to those of Mr. Obrow, the Court shall include those claims in the discussion where applicable.  *See* Business Pursuits Exclusion, Section VII.

us against these insurers were assigned to the PSC.[10]

The PSC amended the Master Complaint on September 5, 1989 [11] to include the newly assigned claims against these insurers as well as its claims pursuant to the Puerto Rico direct action statute, 26 L.P.R.A. §§ 2001 and 2003.

Wausau advances various arguments in its motions to support dismissal.  After careful review and consideration, the Court finds as follows:

## II.  IN PERSONAM JURISDICTION

■ Co-defendant Wausau alleges that the Court lacks personal jurisdiction under the analysis of minimum contacts and that the Court's exercise of personal jurisdiction would result in a violation of the Fourteenth Amendment, Due Process Clause of the United States Constitution.

The Court finds that traditional notions of fair play and substantial justice are not offended by the exercise of personal jurisdiction over these defendants within the

3.  The defendants in the second subphase of the Phase III Insurance Trial initially included American Manufacturers Mutual Insurance Company, Crum & Forster, Fireman's Fund Insurance Company, General Accident Insurance Company, Insurance Company of North America, Pennsylvania General Insurance Company, Safeco Insurance Company of America, State Farm Fire & Casualty Company and Wausau Underwriters Insurance Company.  At this time, the only remaining defendants are the insurers of Messrs. Obrow and Fillius; i.e. Wausau Underwriters Insurance Co. and American Manufacturers Mutual Insurance Co.; all others having settled.

4.  The Grand Hotel Associates d/b/a Grand–Anaheim–Hotel is managed by Grand Hotel, Inc. which is a limited partner of the San Juan Hotel Associates.  Grand Hotel Inc. is owned by Holders Capital Corporation formed by the partnership of W.D. Eberle (21%), Brian Corbell (58%) and William Lyon (21%).

5.  The Wausau policy, No. 01–1MUB–0654–8712, is a personal umbrella policy effective from December 7, 1986 through December 7, 1987.

6.  The policy issued by American, No. 6CT 964095, is a personal liability policy effective July 3, 1986 through July 3, 1987.

7.  The defendants in the Phase I Trial were collectively known as the "Dupont entities" and included individuals, partnerships and corporations which collectively owned, managed and/or operated the Hotel.

8.  Grand Hotel Associates employed Robert Zonitch as the executive manager of the Grand Hotel who provided services to San Juan Dupont Plaza Corp. related to the construction, alteration, operation, management, possession and control of the San Juan Dupont Plaza Hotel during 1984, 1985 and 1986.  *See* Revised Master Complaint (docket No. 736), filed on December 3, 1987, ¶ G.2.

9.  The Phase I Trial commenced on March 15, 1989 and lasted until May 12, 1989.

10.  The PSC and Messrs. Obrow and Fillius entered into a Covenant Not to Execute and/or Record Judgment whereby each defendant assigned his rights to pursue claims against his insurer to the plaintiffs.

11.  *See* Fourth Amended Revised Master Complaint, docket No. 12516, filed on September 5, 1989.

context of this ongoing, complex litigation. *See, e.g., In re Agent Orange Product Liability Litigation,* 818 F.2d 145, 163 (2nd Cir.1987) (the transfer and consolidation of actions pursuant to 28 U.S.C. § 1407, the multidistrict litigation statute, are not impeded by problems of in personam jurisdiction and venue) (citing *In re Sugar Industry Antitrust Litigation,* 399 F.Supp. 1397, 1400 (J.P.M.L.1975) and *In re FMC Corporation Patent Litigation,* 422 F.Supp. 1163, 1165 (J.P.M.L.1976)).

The history of this multidistrict litigation supports this finding. Shortly after the filing of the initial actions, the Judicial Panel on Multidistrict Litigation found that all claims shared common questions of fact and that centralization would serve the convenience of parties and witnesses and promote a just and efficient resolution.[12] Consequently, all actions were transferred to this district for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.[13] All transferred cases were later consolidated for all purposes, including trial, pursuant to 28 U.S.C. § 1404(a).[14]

Although the complexity of the case, the involvement of numerous parties and the plethora of issues necessitated several trial phases,[15] the conglomerate of all proceedings is, in actuality, a single litigation. The current and final phase includes claims against insurers of the Dupont entities who were defendants in the Phase I Trial.[16] Thus, judicial interests as well as the interests of the parties continue to be better served by resolving all matters in these proceedings in the forum most familiar with the issues.[17]

In light of the particular circumstances and complex nature of the multidistrict litigation, defendant's request for dismissal for lack of in personam jurisdiction is hereby DENIED.

## III. SUBJECT MATTER JURISDICTION

Co-defendant Wausau alleges that subject matter jurisdiction is lacking. To support this contention, it refers the Court to the arguments presented in a previously submitted motion by Pacific Employers Insurance Company and First State Insurance Co. (docket No. 16506) filed on April 8, 1991, pp. 7–10. In the motion incorporated therein, the insurers allege that realignment of the parties is warranted and if effected, diversity jurisdiction would be destroyed. Assuming, arguendo, that realignment is proper, the facts clearly show that diversity between the parties exists as Mr. Obrow is a resident of California and Wausau's place of incorporation and principal place of business is Wisconsin. There is no basis for Wausau's mere conclusive statement[18] that subject matter jurisdiction is lost once the parties are realigned. Therefore, Wausau's motion is hereby DENIED.

■ Furthermore, pursuant to the principles of ancillary jurisdiction, the Court has jurisdiction to review all other related cross-claims where subject matter jurisdiction existed in the original action. *See Zurn Industries, Inc. v. Acton Construction Co., Inc.,* 847 F.2d 234, 236 (5th Cir. 1988) (the Court determines diversity jurisdiction at the beginning of the action and, thereafter, the Court may have ancillary jurisdiction over parties for cross-claims and counterclaims even where diversity ceases to exist).

## IV. STANDING/NON–ASSIGNABILITY CLAUSE

■ Wausau contends that the PSC lacks standing to pursue the assigned

---

**12.** *See* docket No. 142a, filed on May 13, 1987.

**13.** *See* Pretrial Order No. 20 (docket No. 591), filed on November 25, 1987, p. 1.

**14.** *See* Pretrial Order No. 130 (docket No. 7400), filed on December 21, 1988.

**15.** *See* Pretrial order No. 133 (docket No. 7403, filed on December 21, 1988) identifying trial stages.

**16.** *See, supra* footnote 7.

**17.** It is interesting to note that this Court's finding is consistent with a bill currently pending before the Congressional Committee on the Judiciary seeking amendments to federal jurisdiction of multiparty multiforum civil actions. *See* H.R. 2450, 102D. Cong., 1st Sess., §§ 2, 4 (1991).

**18.** *See* docket No. 16705, p. 19.

claims of Messrs. Obrow and Fillius because the policy contains a non-assignability clause which reads:

> Assignment of this policy shall not be valid unless we [Wausau] give our written consent.

The Court finds that the non-assignability clause is not enforceable under these specific circumstances. Since the purpose of the non-assignability clause is for the "benefit and protection of the insurer" by "prevent[ing] an increase of risk and hazard of loss by a change of ownership without the knowledge of the insurer," 16 George J. Couch et al., *Couch on Insurance 2d*, § 63.31 at 757 (1983), many Courts have found this provision inapposite where the insured in actuality assigns the right of action on the policy after the loss has occurred or assigns a claim to the proceeds once the policy has lapsed. 16 *id.* §§ 63.36 & 63.40. Given the circumstances here, i.e., assignment after the loss, the assignment does not operate to increase the risk and/or hazard of loss under the policy. Furthermore, restrictive provisions in insurance contracts prohibiting assignment after loss are often found contrary to public policy and, consequently, unenforceable. 16 *id.* § 63.41.

A review of the California case law cited by defendants to support the opposite conclusion shows such reliance to be misplaced. For example, in *Greco v. Oregon Mutual Fire Insurance Co.*, 191 Cal. App.2d 674, 12 Cal.Rptr. 802, 806 (1961), the Court stated that although the policy, by its own terms, prevents the substitution of the insured with another, it is settled law that the right to recover on a policy after the loss has occurred is assignable without company consent. Also, in *University of Judaism, West Coast Branch of Jewish Theological Seminary of America v. Transamerica Insurance Co.*, 61 Cal. App.3d 937, 132 Cal.Rptr. 907, 909–10 (1976), the Court refused to dismiss an action assigned in violation of the non-assignability clause even though the assignment of the policy occurred prior to the loss and without the consent of the insurance company because no additional risks attached to the insurer.

Based on the foregoing, Wausau's motion to dismiss on the ground that Mr. Obrow's claim was assigned to the PSC without its consent is hereby DENIED.

## V. DIRECT ACTION STATUTE

■ Co-defendant Wausau alleges that the terms of the policy preclude the PSC from pursuing a claim under the direct action statute, 26 L.P.R.A. sections 2001 and 2003 which read as follows:

Sec. 2001:

The insurer issuing a policy insuring any person against loss or damage through legal liability for the bodily injury, death, or damage to property of a third person, shall become absolutely liable whenever the loss covered by the policy occurs and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured or upon any final judgment against him arising out of such occurrence.

Sec. 2003:

1) Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The direct action against the insurer may only be exercised in Puerto Rico. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine, not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.

2) If the plaintiff in such an action brings suit against the insured alone, such shall not be deemed to deprive him of the right, by subrogation to the rights of the insured under the policy, to maintain action against and recover from the insurer after securing final judgment against the insured.

Wausau, relying on a portion of the section 2003 which provides that a direct action claim is subject to "the terms and limitations of the policy," argues that the PSC is precluded from pursuing claims under the direct action statute because its policy limits recovery to two specific situations: 1) where the insured's liability and obligation to pay has been determined after a trial and a judgment has been entered, or 2) where written consent has been received from the insurer, the insured and the claimant. Wausau alleges that because these conditions have not been met and because this language is intended to limit the insured's right of recovery, the PSC does not have a cause of action under the direct action statute.

When the aforementioned provision is read in conjunction with § 2001, it is clear that Wausau's interpretation of the wording of § 2003 as supporting this restrictive contract provision is erroneous. In addition, there is ample case law to support a meaning contrary to that suggested by co-defendant. *See, e.g., Trigo v. The Travelers Insurance Co.,* 91 P.R.R. 843, 849 (1965) (the insurer's direct liability is not dependent upon payment by the insured or upon issuance of final judgment); *Garcia v. Northern Assurance Co.,* 92 P.R.R. 236, 246 (1965) (the injured has a cause of action and a right of action against the insurer where he has a right of action and cause of action against an insured) (citing *Harvey v. New Amsterdam Casualty Co.,* 6 So.2d 774 (La.Ct.App.1942)).

In addition, rights conferred by statute take preference over any contract provisions limiting such rights. Therefore, the terms of an insurance policy agreed upon between the insured and the insurer limiting a third party's statutory right[19] to pursue a direct action claim are not enforceable. 12A *Couch, supra* § 45:804 (1981).

Furthermore, the direct action statute does not confer any additional rights against the insurer than those already held by the insured. Since its primary purpose is to provide remedial relief to the injured, it is and has been liberally construed. 12A *id.* §§ 45:798 and 45:800.

Wausau also contends that plaintiffs may not pursue claims under the direct action statute because the policy was not negotiated or issued in Puerto Rico and the item insured is not located in Puerto Rico. Co-defendant concludes that the fact the injury occurred in Puerto Rico, standing alone, does not permit plaintiffs to pursue a claim under the direct action statute against an insurer who is not registered to conduct business in Puerto Rico without violating the insurer's due process rights.

It appearing that the cases[20] cited by Wausau do not address the insured's due process rights under these circumstances but whether the direct action statute confers personal jurisdiction,[21] the Court finds the issue at bar more akin to the facts and findings in *Watson v. Employers Liability Assurance Corp., Ltd.,* 348 U.S. 66, 72–73, 75 S.Ct. 166, 170, 99 L.Ed. 74 (1954), *reh'g denied,* 348 U.S. 921, 75 S.Ct. 289, 99 L.Ed.

---

**19.** Aside from the statutory language cited herein, the injured's right to a direct action claim against the insurer is recognized in case law. *See, e.g., Ramos v. Continental Insurance Co.,* 493 F.2d 329, 331 (1st Cir.1974) (the Puerto Rico direct action statute provides a separate cause of action against the insurer by the injured created by reason of the insurance contract and based on the same factual situation) and *Fraticelli v. St. Paul Fire & Marine Insurance Co.,* 375 F.2d 186, 188 (1st Cir.1967) (same).

**20.** *See, e.g., Morales v. Puerto Rico Marine Management, Inc.,* 474 F.Supp. 1172, 1175–77 (D.P.R.1979) (the principles of direct action are not a legislative grant of personal jurisdiction and do not raise a valid cause of action where the insured, the contract or the casualty is not

related to the Commonwealth in any way); *Hernandez v. Steamship Mutual Underwriting Assoc., Ltd.,* 388 F.Supp. 312, 314 (D.P.R.1974) (where an indemnity contract was made and intended to be performed outside of Puerto Rico, personal jurisdiction could not be conferred through pursuit of a direct action against the insurer); *Torres v. American Service Mutual Insurance Co.,* 294 F.Supp. 635, 637–38 (D.P.R. 1969) (where the Puerto Rico Rules of Civil Procedure provided no provisions for long-arm service of process upon an insurance company which was a foreign corporation not transacting business in Puerto Rico and had no contacts with this forum, jurisdiction was lacking in a direct action claim).

**21.** *See In Personam Jurisdiction,* Section II.

722 (1955). As in the case at bar, the insurance policy had neither been negotiated nor issued in the state of the injured and the insurer was not registered to conduct business in that state, therefore, the insured did not have an agent located within that state for service of process. Nevertheless, the Supreme Court held that the due process rights of an insurer were not violated where, pursuant to its regulatory scheme, the state allows the injured a direct action claim against an insured because it has a legitimate interest in safeguarding the rights of injured residents even though the insurance contract contained a provision prohibiting the pursuit of direct action claims prior to the determination of the insured's liability.

Based on the foregoing, defendant's request to dismiss the PSC's claims under the direct action statute is hereby DENIED.

## VI. BUSINESS PURSUITS EXCLUSION

### A. The Facts

Messrs. Obrow and Fillius were sued in their capacity as limited partners in the Grand Hotel Associates as defendants in the Phase I Trial. At the time of the fire, a personal umbrella policy (No. 01–1MUB–0654–8712) issued by Wausau, listing Mr. Obrow as the named insured, was in effect and contained the following exclusion:

> We won't pay for or defend claims arising out of business pursuits or business property of an insured unless such business activity is of the type covered by your underlying insurance. (emphasis original)

**22.** Although the underlying policy offers a business pursuit option whereby coverage may be extended for bodily injury or personal property arising from a "business ... owned or financially controlled by the insured or by a partnership of which the insured is a partner or member," this option was not elected by the insured.

**23.** Coverage L includes:
**PERSONAL LIABILITY**
... [i]f a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence, we will:**

The underlying insurance policy, issued by State Farm Fire and Casualty Co. (No. 71–27–6532–1), includes the following business pursuits exclusion: [22]

> Coverage L and M [23] do not apply to ... **bodily injury** or **property damage** arising out of the **business** pursuits of an **insured** ... (emphasis original)

Likewise, in effect on the date of the fire was a personal liability policy issued by American (No. 6CT 964095) through the Kemper Group, naming Mr. Fillius as the insured, which contained the following provision:

> This policy does not apply to:
> (k) Business activity or business property.

All three policies define "business" as a "trade, profession or occupation."

### B. Standard of Review

A motion to dismiss an action for failure to state a claim upon which relief could be granted shall not be granted unless it is certain that the plaintiff would not be entitled to recover under any set of facts which could be proven at trial. *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Furthermore, when considering a motion to dismiss, the Court is bound to construe all factual allegations and reasonable inferences in favor of the non-moving party. *Miree v. Dekalb County, Georgia*, 433 U.S. 25, footnote 2, 97 S.Ct. 2490, footnote 2, 53 L.Ed.2d 557 (1977).

### C. Legal Standard

The business pursuit exclusion precludes from coverage any liability incurred as a

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
2. provide a defense at our expense by counsel of our choice ...
Coverage M includes:
**MEDICAL PAYMENTS TO OTHERS**
We will pay the necessary medical expenses incurred or medically ascertained within three years form the date of the accident causing **bodily injury** ... (emphasis original)

result of business activity but generally provides coverage for those activities that are ordinarily incident to non-business pursuits which occurred while the insured was engaged in a business pursuit. Job A. Sandoval, Annotation, *Constitutional Application of "Business Pursuits" Exclusion Provision in General Liability Policy*, 46 A.L.R.3d 1096, 1107–1108 (1972); Lawrence A. Frazier, *The "Business Pursuits" Exclusion in Personal Liability Insurance Policies, What the Courts Have Done with It*, 572 Insurance LJ 519 (1970). Undoubtedly, a businessman's activities create greater liability exposure and risk which, in turn, may warrant higher premiums and require special underwriting and rating.

Courts that have addressed this problem have defined business pursuits in various ways. For example, the Eighth Circuit defined " '[b]usiness pursuits' as ... a very comprehensive term ... [which] can only be construed as embracing everything about which a person may be engaged where profit is a motive", *Salerno v. Western Casualty & Surety Co.*, 336 F.2d 14, 19 (8th Cir.1964); whereas a New York State Supreme Court found that "[t]o constitute a business pursuit, there must be two elements: first, continuity, and, secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements", *Fadden v. Cambridge Mutual Fire Insurance Co.*, 51 Misc.2d 858, 274 N.Y.S.2d 235, 241 (N.Y.Sup.Ct.) *aff'd*, 27 A.D.2d 487, 280 N.Y.S.2d 209 (N.Y.App.Div.1967); and the Minnesota Supreme Court found that "the business contemplated by the printed provisions of the policy was a type of activity in which persons regularly engage for the purpose of earning a livelihood or for gain, such as a

'trade, profession or occupation' ... [i]n excluding 'business pursuits' the policy intends to exclude coverage of commercial enterprises", *Allied Mutual Casualty Company v. Askerud*, 254 Minn. 156, 94 N.W.2d 534, 539–540 (Minn.1959).

Whereas Messrs. Obrow and Fillius are domiciled in California and the insurance contracts in question were issued in and intended to insure property located in California, the Court must look to California state law to determine whether these limited partnerships in the Grand Hotel Associates are "business pursuits" within the particular terms of these insurance policies. 2 *Couch, supra*, §§ 16:1–16:15 (1984). California case law ascribes to the view that a business pursuits exclusion precludes coverage for any activity entered into with the main purpose of profit or gain regardless of whether the business engaged in by the insured is a part-time activity or a primary occupation. *State Farm Fire and Casualty Co. v. Drasin*, 152 Cal.App.3d 864, 199 Cal.Rptr. 749, 752 (1984) (the insureds' limited partnership in mining leases was a business pursuit even though one of the partners was an attorney by profession). *See also, State Farm Fire and Casualty Co. v. Geary*, 699 F.Supp. 756 (N.D.Cal. 1987).

### D. Discussion

■ Wausau claims that all business related activities of the insured are specifically excluded from coverage by the terms of the insurance policies. On the other hand, the PSC alleges that the "passive investment activities" of Messrs. Obrow and Fillius fall outside the business pursuits exclusion contained in the personal umbrella policy and personal liability insurance policy at issue.[24]

In order for the PSC to prevail, evidence presented at trial would have to show that Messrs. Obrow and Fillius, as limited partners in the Grand Hotel Associates,[25] were liable to the plaintiffs for the injuries sus-

---

**24.** The arguments presented in the PSC's opposition on this issue submitted in response to Wausau's motion are applicable to the insurance policy issued by co-defendant American as the policy language and insureds' activities in question are essentially the same.

**25.** The Grand Hotel Associates is not a named insured in either insurance policy.

**1220**

tained as a result of the fire. Thereafter, in order to find liability, the PSC would have to show that Messrs. Obrow's and Fillius' particular insurance policies cover these investment activities.

Assuming, arguendo, that the PSC meets its burden as to the first point, the Court finds that as a matter of law, coverage provided by the policies at issue does not extend to these particular acts of the insureds as such activities fall within the "business pursuits" exclusion contained in the policies. Investment activities are commercial ventures which, by their very nature, are entered into with the intent to earn profit.[26]

Furthermore, contrary to the PSC's allegations, the Court finds that the investment activities of Messrs. Obrow and Fillius do not represent spare time interests of the insureds regardless of whether they are gainfully employed in another trade, business or occupation. The activities at issue here are investments in a limited partnership which are clearly motivated by profit and are easily distinguishable from spare time pursuits such as hobbies or leisure activities identified in the case relied upon by plaintiffs. *See Southern Guaranty Insurance Co. v. Duncan*, 131 Ga.App. 761, 206 S.E.2d 672 (1974) (business pursuit exclusion did not preclude coverage for injuries sustained by a neighbor when a piece of metal pierced his eye because of the insured's negligence when removing a steering wheel from an automobile used solely for racing purposes).

In light of the above, the Court finds that the investment activities of Messrs. Obrow and Fillius in the Grand Hotel Associates are business pursuits properly excluded from coverage under the policies issued by Wausau and American.

### VII. CONCLUSION

Accordingly, Wausau's request for dismissal (docket Nos. 13133, 16701 & 16705)

---

is hereby GRANTED. Based on the foregoing discussion, the PSC's direct action claims as well as the assigned claims of Messrs. Obrow and Fillius against Wausau Underwriters Insurance Co. (policy No. 01–1MUB–0654–8712) and American Manufacturers Mutual Insurance Co. (policy No. 6CT 964095) are hereby DISMISSED for failure to state a claim upon which relief can be granted.

Partial judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**26.** The Court finds that the PSC's distinction that the investment activities are "passive," as opposed to "active," is of no consequence in determining whether investment activities are considered business pursuits. *See AIU Insurance Company v. Superior Court (FMC Corp.)*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 821–822, 799 P.2d

1253 (1990) (terms in an insurance contract shall be construed according to the common usage and plain meaning of the words; the meaning ascribed by a layperson shall be applicable provided that such meaning is not ambiguous).