IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
03-0957
════════════
 
Allstate 
Insurance Company, Petitioner
 
v.
 
Ruth 
Hallman, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fifth District of Texas
════════════════════════════════════════════════════
 
 
Argued October 20, 2004.
 
 
Chief Justice Jefferson delivered the 
opinion of the Court.
 
In 
this case we must determine whether, under a homeowners insurance policy’s 
terms, an insurer has a duty to defend and indemnify an insured’s potential 
liability for damages resulting from limestone mining operations conducted on 
the insured’s property. Neighboring property owners sued Ruth Hallman 
(“Hallman”) for damages related to limestone mining on her property. Hallman 
sought coverage under her homeowners insurance policy (“the policy”) with 
Allstate Insurance Company (“Allstate”), requesting that Allstate defend and 
indemnify her in the lawsuit. Allstate and Hallman both sought a declaratory 
judgment to determine whether the policy covered the underlying litigation. The 
trial court granted summary judgment in Allstate’s favor. The court of appeals 
reversed the trial court’s judgment and remanded for further proceedings, 
holding that Allstate had a duty to defend and indemnify Hallman in the 
limestone mining litigation. 114 S.W.3d 656, 663. Because we conclude that 
damages to third parties caused by commercial limestone mining conducted on an 
insured’s property fall within the policy’s business pursuits exclusion, we 
reverse the court of appeals’ judgment and render judgment for Allstate.
 
I
Background 
 
In 
1995, Hallman leased property she owns in rural 
Kaufman 
County to Norton Crushing, Inc. 
(“Norton”) for limestone mining.[1] 
In 1996, neighboring landowners sued Hallman, Norton, and all subcontractors 
involved in the mining project, alleging that the blasting from the mining 
damaged their property and their health. Hallman filed a claim under the policy 
requesting defense and indemnification. Allstate agreed to defend Hallman under 
a reservation of rights but filed this declaratory judgment action seeking a 
determination that Hallman’s claim was not covered under the policy’s terms. 
Hallman counterclaimed seeking a declaration that Allstate had a duty to defend 
and indemnify her in the underlying litigation. Both parties sought attorney’s 
fees. 
Allstate 
moved for summary judgment, arguing that the injuries and damages relating to 
the limestone mining did not constitute an “occurrence” as required for coverage 
under the policy, and alternatively, that the mining operations were excepted 
from coverage under the policy’s business pursuits exclusion. Hallman moved for 
partial summary judgment, asserting that she was entitled to a defense because 
her neighbors’ allegations constituted an “occurrence” as defined in the policy. 
The trial court granted Allstate’s motion, denied Hallman’s, and denied both 
parties’ requests for attorney’s fees. The court of appeals reversed, concluding 
that the policy covered Hallman’s claim because: (1) the mining damages 
constituted an “occurrence,” and (2) the business pursuits exclusion did not 
apply. 114 S.W.3d at 663. The court of appeals remanded the attorney’s fees 
issue to the trial court for further proceedings. 
Id. at 663-64. We granted 
Allstate’s petition for review to determine whether the policy covers potential 
liability for damages from commercial limestone mining. 47 
Tex. Sup. Ct. J. 753 (July 2, 2004). 
During 
oral argument before this Court, the parties announced that the underlying 
lawsuit between Hallman and her neighbors had recently concluded with a jury 
verdict in Hallman’s favor. Allstate provided Hallman with a defense throughout 
the trial and does not intend to seek reimbursement for the defense costs.
 
II
Mootness 
 
As 
a preliminary matter, we must consider whether the conclusion of the underlying 
litigation renders this case moot. The main issue here is whether Allstate has a 
duty to defend and indemnify Hallman in the mining litigation. Allstate, 
however, has already provided the requested defense, for which it will not seek 
reimbursement. Additionally, because Hallman was not found liable at trial, 
there is nothing for Allstate to indemnify. Nevertheless, both parties maintain 
that a justiciable controversy remains because Hallman 
continues to seek an award of attorney’s fees for expenses incurred in defending 
against Allstate’s declaratory judgment action and in pursuing her own 
declaratory relief. 
We 
agree with the parties that this case is not moot. A case becomes moot if a 
controversy ceases to exist or the parties lack a legally cognizable interest in 
the outcome. Bd. of Adjustment of San 
Antonio v. Wende, 92 
S.W.3d 424, 427 (Tex. 2002). In 
Camarena v. Texas Employment Commission, 
754 S.W.2d 149, 151 (Tex. 1988), 
we held that a dispute over attorneys fees is a live controversy. In that 
declaratory judgment action, farm workers sued to challenge the 
constitutionality of the Texas Unemployment Compensation Act’s (“TUCA”) 
agricultural exemption. Id. 
at 150. The trial court held that the act was unconstitutional but found that 
sovereign immunity barred the farm workers’ request for attorney’s fees. 
Id. Four months later, the 
Legislature amended the TUCA, rectifying the offending provision. 
Id. Consequently, the trial 
court modified its judgment, holding that the amended act was constitutional and 
enjoining the former act’s enforcement. 
Id. The Texas Employment 
Commission appealed, arguing that the amendment rendered the case moot. 
Id. The farm workers 
cross-appealed, contesting the denial of attorney’s fees. 
Id. The court of appeals 
held that the case was moot and that attorney’s fees were barred by sovereign 
immunity. Id. at 150-151. 
We disagreed, holding: 
 
Clearly, 
a controversy exists between the farm workers and 
TEC. The "live" issue in controversy is 
whether or not the farm workers have a legally cognizable interest in recovering 
their attorney's fees and costs. The fact that the Legislature wisely undertook 
action to bring the farm workers within the scope of TUCA does not moot or void 
the workers' interest in obtaining attorneys fees and costs for the successful 
disposition of their claim. Contrary to the court of appeals' suggestion, the 
attorney's fees issue need not be severed in order to be considered; it is an 
integral part of the farm workers' claim and as such breathes life into the 
appeal. Due to the existence of the "live" issue of attorney's fees and costs, 
we hold that the suit was not moot.
 
Id. 
at 151.
Similarly, 
Hallman’s remaining interest in obtaining attorney’s fees “breathes life” into 
this appeal and prevents it from being moot. See id. The parties 
correctly point out that in order to resolve the attorney’s fees dispute, we 
must first determine whether Allstate had a duty to defend and indemnify under 
the policy. In a declaratory judgment proceeding, the trial court has the 
discretion to award “equitable and just” attorney’s fees. Tex. Civ. Prac. & Rem. Code § 37.009. Here, the 
trial court, having found against Hallman on the coverage issue, also denied her 
request for attorney’s fees. Because the court of appeals found that Hallman 
prevailed on the coverage issue, it remanded the attorney’s fees question to the 
trial court. 114 S.W.3d at 663-64. Our decision in this case will resolve 
whether Allstate had a duty to defend. The controversy is live because an 
affirmative answer would necessitate a remand to the trial court to consider 
whether an award of attorney’s fees is appropriate in light of the changed 
status of prevailing parties. Accordingly, we will address the merits of this 
coverage dispute.
 
III 

Discussion
 
To 
determine an insurer’s duty to defend, we look at the allegations in the 
pleadings and the insurance policy’s language. Nat’l Union Fire Ins. Co. of 
Pittsburgh, 
Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 
(Tex. 1997); Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 
S.W.2d 22, 24 (Tex. 1965). If the 
pleadings do not allege facts within the scope of the policy’s coverage, an 
insurer does not have a duty to defend. Am. Physicians Ins. Exch. v. 
Garcia, 876 S.W.2d 842, 848 
(Tex. 1994). However, in the event 
of an ambiguity, we construe the pleadings liberally, resolving any doubt in 
favor of coverage. Merchs. Fast Motor Lines, 
Inc., 939 S.W.2d at 141; Heyden Newport Chem. 
Corp., 387 S.W.2d at 26.  
Under 
the terms of the policy, Allstate has a duty to defend Hallman against a suit 
alleging damages caused by an “occurrence.” However, the policy specifically 
excludes from coverage: “bodily injury or property damage arising out of or in 
connection with a business engaged in by an insured. But this exclusion does not 
apply to activities which are ordinarily incidental to non-business pursuits.” 
“Business” is defined as “includ[ing] trade, profession or occupation.” Allstate argues that 
Hallman’s claim is barred from coverage under this business pursuits 
exclusion.
Although 
the business pursuits exclusion is a fairly common provision of insurance 
policies, we have never directly addressed its application.[2] 
The parties and the court of appeals relied on the standard set forth by the San 
Antonio Court of Appeals in United Services Automobile Ass’n v. Pennington, 810 S.W.2d 777, 778-80 (Tex. 
App.BSan 
Antonio 1991, writ denied), a case involving a business pursuits exclusion 
provision substantially identical to the one here. The Pennington court, 
after reviewing the dictionary definitions of “trade,” “profession,” and 
“occupation,” as well as case law from other jurisdictions, defined the 
“business pursuits” inquiry as involving two elements: “(1) continuity or 
regularity of the activity, and (2) a profit motive, usually as a means of 
livelihood, gainful employment, earning a living, procuring subsistence or 
financial gain, a commercial transaction or engagement.” 
Id. at 780 (citations 
omitted). Regarding the second element, the court further noted: “The profit 
need not be realized - the issue is the expectation or anticipation for profit 
in the future - since often business ventures result in a loss.” 
Id. 
Most 
jurisdictions follow similar versions of this two-part inquiry when construing 
business pursuits exclusions. See, e.g., Sun Alliance Ins. Co. of 
P.R., Inc. v. Soto, 836 F.2d 834, 836 (3d Cir. 1988); Stuart v. Am. 
States Ins. Co. 953 P.2d 462, 465 
(Wash. 1998); Frankenmuth Mut. Ins. Co. v. Kompus, 354 
N.W.2d 303, 307-308 (Mich. Ct. App. 1984); see also 
Lee R. Russ & Thomas F. Segalla, Couch on 
Insurance § 128:13 (3d ed. 1997 & Supp. 2004). A few jurisdictions, 
however, limit the exclusion’s application to those activities that constitute 
an insured’s principal occupation. See, e.g., Brown v. Peninsular Fire Ins. 
Co., 320 S.E.2d 208, 209 (Ga. Ct. App. 1984); Asbury v. Ind. Union Mut. Ins. Co, 441 N.E.2d 232, 239 (Ind. Ct. App. 1982). 
Because the policy’s definition of business as “including trade, profession or 
occupation” encompasses more than an insured’s primary occupation, we conclude 
that the majority approach more accurately describes the exclusion’s parameters. 
Accordingly, we adopt the two-part standard articulated in 
Pennington for determining whether a claim is excluded from coverage 
under the business pursuits exclusion. See Pennington, 810 S.W.2d at 780. 

Applying 
the Pennington standard, the court of appeals concluded that the 
underlying petition did not allege continuity of activity because Hallman 
entered into only one lease agreement, which was executed nearly ten years ago. 
114 S.W.3d at 662. The court further noted the petition’s failure to allege that 
Hallman leased her property as a means of livelihood, or earning a living, or 
that her principal business was leasing property. Id. Based on these 
conclusions, the court of appeals held that the business pursuits exclusion did 
not apply to Hallman’s claim. See id. at 662-63. 
We 
disagree. By narrowly limiting its focus to Hallman’s initial execution of the 
lease, the court of appeals misconstrued the nature of commercial leasing 
activity. The pleadings establish that the mining activity conducted on 
Hallman’s property pursuant to the lease began in 1995, was ongoing at the time 
the plaintiffs initiated their suit in 1996, and remained ongoing at the time 
the plaintiffs filed their sixth amended petition in 2001. Although Hallman 
executed only one lease, until that lease expires, she is perpetually engaged in 
the continuous act of leasing her property to the mining company. Thus, the 
limestone mining lease meets the continuity requirement of the business pursuits 
exclusion.
Next, 
we consider whether profit was Hallman’s motivation for leasing her property. 
The court of appeals, noting that courts are limited to the language in the 
pleadings and the policy when determining an insurer’s duty to defend, concluded 
that the lease failed to meet the profit motive requirement. 114 S.W.3d at 
662-63. Admittedly, the pleadings do not contain any reference to Hallman’s 
pecuniary interest in the lease, nor do they expound on her motive for leasing 
her property. However, we conclude that, in this circumstance, a profit motive 
can be inferred from the nature of the activity. One generally does not allow 
limestone mining with dynamite blasting to occur on his or her property without 
some expectation of remuneration or monetary gain. See 
Lee R. Russ & Thomas F. Segalla, Couch on 
Insurance § 128:13 (3d ed. 1997) (noting that courts look “particularly 
to the nature of the activity” when determining if an activity constitutes a 
business pursuit”); cf. In re San Juan Dupont Plaza Hotel Fire Litig., 789 F. Supp. 1212, 1220 (D. P.R. 1992) (holding 
that business pursuits exclusion defeated coverage because “[i]nvestment activities are 
commercial ventures which, by their very nature, are entered into with the 
intent to earn profit”); Vallas v. 
Cincinnati Ins. Co., 624 So.2d 568, 571 (Ala. 1993) (finding business 
pursuits exclusion applicable and noting “we cannot say that the limited 
partnership, which was formed to buy and sell investment real property for 
capital gain, was not ‘an undertaking . . . for gain [or] profit’“); State 
Farm Fire & Cas. Co. v. Drasin, 199 Cal. Rptr. 749, 
750, 753 (Cal. Ct. App. 1984) (claims arising from partnership agreement to 
acquire mining leases fell under business pursuits exclusion where “[t]he 
purpose of acquiring the mining leases was to enjoy the production of income, 
profits and write-offs incidental to the mining operations”).
Furthermore, 
as numerous courts have recognized, the purpose of the business pursuits 
exclusion is to lower homeowners insurance premiums by removing coverage for 
activities that are not typically associated with the operation and maintenance 
of one’s home. See, e.g., Buirkle v. Hanover Ins. 
Cos., 832 F.Supp. 469, 486-487 (D. Mass. 1993); 
Kepner v. W. Fire Ins. Co., 509 P.2d 
222, 223 (Ariz. 1973); LeBlanc v. Brossard, 396 So.2d 535, 536 (La. Ct. 
App. 1981). Commercial limestone mining is not an activity typically associated 
with owning and maintaining a home. Thus, the limestone mining lease at issue 
here is exactly the type of commercial enterprise that the business pursuits 
provision was designed to exclude. 
We 
hold that Hallman’s lease to Norton constituted a business pursuit and therefore 
the allegations in the underlying litigation are excluded from coverage under 
the policy.
 
IV
Conclusion
 
Therefore, 
even if the allegations in the underlying lawsuit state an “occurrence,” — a 
question we do not reach — we nevertheless conclude that the business pursuits 
exclusion applies and bars coverage. Because the trial court reached the same 
conclusion and denied Hallman’s request for fees, there is no need to remand 
this case to the trial court for a determination of Hallman’s request for 
attorney's fees. Accordingly, we reverse the court of appeals’ judgment and 
render judgment for Allstate. See Tex. R. App. P 60.2(c).
 
______________________________
Wallace B. 
Jefferson             

Chief Justice                    

 
OPINION 
DELIVERED: March 11, 
2004




[1] Meridien Aggregates, Co., 
L.L.P. (“Meridien”) purchased Norton’s interest in 
1999 and now operates the lease. 

[2] We have, however, addressed the “activities incidental 
to non-business pursuits” exception to the exclusion. See State Farm Fire 
& Cas. Co. v. Reed, 873 
S.W.2d 698, 698-701 (Tex. 1993).